## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DENISE M. CLARK,          )
                          )
          Plaintiff,   )
                          )
   v.                  )     Civil Action No. 07 CV 470 (JDB)
                          )
FEDER SEMO and BARD, P.C.,   )
FEDER SEMO and BARD, P.C.    )
RETIREMENT PLAN and TRUST,   )
JOSEPH E. SEMO, and       )
HOWARD M. BARD,         )
                          )
          Defendants. )
_____ )

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff Denise Clark respectfully moves the Court for leave to amend her Complaint a second time under Rule 15(a) of the Federal Rules of Civil Procedure. The grounds for this motion are:

1.    The Court's December 17, 2007 decision (dkt. #17) held that Plaintiff does not have a cognizable claim under ERISA Section 502(a)(2), 29 U.S.C. §1132(a)(2), because Plaintiff does not specifically allege that she requests relief on behalf of the Plan.

2.    Plaintiffs' proposed Second Amended Complaint cures the deficiencies identified by the Court by clarifying that the allegations in Claim III that the Defendant trustees breached their fiduciary duties in the collection,

accounting, and distribution of the assets of the Feder, Semo and Bard, P.C.

Retirement Plan under ERISA §404, 29 U.S.C. §1104, are brought on behalf of the

Plan pursuant to the authority in ERISA §502(a)(2), 29 U.S.C. §1132(a)(2).

3.    Defendants will not be prejudiced by the amendment and the

amended complaint is not futile.

4.    A Memorandum in Support, Proposed Second Amended Complaint,

and Proposed Order accompanies this Motion.

5.    The undersigned counsel for Plaintiffs certifies pursuant to L.Civ.R.

7(m) that he conferred in good faith with Jason Ehrenberg, counsel for

Defendants, about this motion on January 15, 2008, and Mr. Ehrenberg indicated

that his clients oppose the motion.

WHEREFORE, Plaintiff moves that this Court grant Plaintiff's motion for

leave to amend the complaint.

Respectfully submitted,

 /s/ Stephen R. Bruce
Stephen R. Bruce (D.C. Bar. No. 289066)
Allison C. Caalim (D.C. Bar No. 494372)
805 15th St., NW, Suite 210
Washington, D.C. 20005
(202) 371-8013
(202) 371-0121 (f)
stephen.bruce@prodigy.net

Attorneys for Plaintiff

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 16th day of January 2008, a true and correct copy of (1) Plaintiff's Motion for Leave to Amend Complaint, (2) the Memorandum in Support with Exhibit 1 (a redlined complaint), (3) the Proposed Second Amended Complaint, (4) the Affidavit of Gerald Feder, (5) the Proposed Order and (6) this Certificate of Service was sent via CM/ECF electronic filing, addressed to the following counsel:

James C. Bailey
Jason H. Ehrenberg
BAILEY & EHRENBERG PLLC
1155 Connecticut Ave NW
Suite 1100
Washington, D.C. 20036

Attorneys for Defendants

/s/ Stephen R. Bruce

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DENISE M. CLARK,          )
                                   )
                Plaintiff,   )
                                   )
     v.                         )     Civil Action No. 07 CV 470 (JDB)
                                   )
FEDER SEMO and BARD, P.C.,   )
FEDER SEMO and BARD, P.C.    )
RETIREMENT PLAN and TRUST,  )
JOSEPH E. SEMO, and         )
HOWARD M. BARD,          )
                                   )
              Defendants. )
_____ )

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT

Stephen R. Bruce
Allison C. Caalim
805 15th St., NW
Suite 210
Washington, D.C. 20005

Attorneys for Plaintiff

# Table of Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    Under F.R.C.P. 15's Liberal Standards, Leave to Amend Is Permitted
      Where the Amendment Clarifies Existing Allegations. . . . . . . . . . . . . . . . . 3

II.   The Amended Complaint Cures the Deficiencies Identified in this
      Court's Decision by Clarifying that Plaintiff's Breach of Fiduciary Duty
      Claim Is to Restore Losses to the Plan Under ERISA Section 502(a)(2);
      Defendants Will Not Be Prejudiced by the Amendment and the Amended
      Claim Is Not Futile. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Introduction**

The Plaintiff requests that this Court grant leave to amend the Complaint to clarify that Plaintiff's claim that the individual Defendant trustees breached their fiduciary duties under ERISA §404, 29 U.S.C. §1104, in the collection, accounting, and distribution of the assets of the Feder, Semo and Bard, P.C. Retirement Plan and Trust seeks to recover losses resulting from those breaches on behalf of the Plan under ERISA §502(a)(2), 29 U.S.C. §1132a)(2).

Plaintiff Denise Clark was an attorney and managing partner for Defendant Feder, Semo and Bard, P.C. and a participant in the Feder, Semo and Bard, P.C. Retirement Plan and Trust ("Plan") until she left in July 2002. The Plan provided that she would be eligible to receive her accrued benefit in the form of an annuity or lump sum actuarial equivalent five years after her termination. Over the course of her employment, Ms. Clark earned an annuity benefit of $4,861 per month. In September 2005, Ms. Clark received a letter stating that she would only receive a lump sum distribution of $166,541.71, an amount drastically less than the $312,381 lump sum actuarial equivalent of the $4,861 annuity that she had earned. According to counsel for the firm, her benefits had been "pro-rata reduced to match the plan's assets."

On March 13, 2007, Ms. Clark filed a two-count Complaint alleging that Defendants impermissibly reduced or eliminated an optional form of benefit in

violation of ERISA §204(g)(2), 29 U.S.C. §1054(g)(2) (Claim I) and that

Defendants violated ERISA's disclosure requirements (Claim II).  On June 1,

2007, Plaintiff added a third claim that the individual Defendant trustees breached

their fiduciary duties under ERISA §404, 29 U.S.C. §1104, by

> "(a) allowing the Plan's funded status to dwindle from close to 100%
> funding at the end of 2001 to less than 55% funding without taking actions
> to maintain the Plan;
>
> "(b) failing to collect all contributions due the Plan after the 2001 plan year;
>
> "(c) miscalculating the Plan's liabilities to the former owner and principal
> partner of Feder, Semo and Bard, P.C.; and
>
> "(d) otherwise mishandling and negligently failing to review the accounting
> of the Plan's liabilities to participants and the collection, marshaling, and
> distribution of its assets."

Claim III alleges that the trustees breached their fiduciary duties to conform with

the statutory requirements of ERISA in these actions and further breached those

duties by failing to protect optional forms of benefit and failing to disclose the

potential losses on plan termination, as alleged in Claims I and II.

Defendants moved for judgment on the pleadings on all three claims on

June 22, 2007.  Dkt. #12. On December 17, 2007, this Court granted in part and

denied in part Defendants' motion. With respect to Claim III, the Court held that

Plaintiff could not pursue a breach of fiduciary duty claim under ERISA

§502(a)(2), 29 U.S.C. §1132(a)(2), because "[s]uch a claim would have to be brought on behalf of the Plan and for the benefit of the Plan." Slip Op. at 9. Because the "amended complaint focuses on individualized relief and does not request that any losses be restored to the Plan as a whole," the Court held that Plaintiff did not have a cognizable claim under Section 502(a)(2). Id. at 10.

In light of Your Honor's decision, Plaintiff respectfully requests leave to amend the Complaint to clarify that the allegations that the individual trustees breached their fiduciary duties under ERISA §404, 29 U.S.C. §1104, in the collection, accounting, and distribution of the Plan's assets, are made on behalf of the entire Plan. As described below, the proposed amended Complaint does not add any new legal theories but clarifies the pleadings in response to Your Honor's December 17, 2007 ruling. Defendants will not be prejudiced by the amendment at this early stage of the proceedings, nor is the amended claim futile.[1]

## I.    Under F.R.C.P. 15's Liberal Standards, Leave to Amend Is Permitted Where the Amendment Clarifies Existing Allegations.

It is well-established that leave to amend a complaint is liberally granted when appropriate. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962); Boyd v. District of Columbia, 465 F.Supp.2d 1, 3 (D.D.C. 2006) (court "must heed Rule

---

[1] In addition to the Proposed Second Amended Complaint, a red-lined version of the Complaint is attached for the Court's convenience as Ex. 1.

15's mandate that leave is to be freely given when justice so requires"). In

accordance with Rule 15's standards, courts will grant leave to amend "[i]n the

absence of any apparent or declared reason--such as undue delay, bad faith or

dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, [or] futility of amendment." Atchinson v. Dist. of

Columbia, 73 F.3d 418, 425-26 (D.C. Cir. 1996). Indeed, "[i]f the underlying facts

or circumstances relied upon by a plaintiff may be a proper subject of relief, he

ought to be afforded an opportunity to test his claim on the merits." Boyd, 465

F.Supp.2d at 3.

        In particular, if "an amendment would do no more than clarify legal theories

or make technical corrections," it should be permitted. Harrison v. Rubin, 174

F.3d 249, 253 (D.C. Cir. 1999); accord, B.R. v. District of Columbia,

__F.Supp.2d__, 2007 WL 4238963, *1 (D.D.C. 2007) (granting leave to amend to

allow plaintiff to "clarify her factual allegations"); Openshaw v. Consol. Eng'g

Servs., 2007 WL 1087482, *4 (D.D.C. 2007) (ordering amendment "so as to

clarify that Counts VII and VIII comprise claims for the common law tort of

public nuisance" where existing allegations indicated Plaintiffs sought relief for

special damages "distinct from that common to the public").

Courts have specifically permitted Plaintiffs to replead their breach of fiduciary duty claims under Section 502(a)(2).  See, e.g., <u>Champaign v. Carter</u>, 2006 U.S. Dist. LEXIS 91480, *4-5 (N.D.Ga. 2006) (granting plaintiffs' request to specify their claim as a breach of fiduciary duty claim under §502(a)(2)); <u>Darling v. Steelworkers W. Independent Shops Pension Plan</u>, 2004 WL 2203558, *3 (N.D.Cal. 2004) (permitting plaintiffs to replead claim under §502(a)(2)).

**II.    The Amended Complaint Cures the Deficiencies Identified in this Court's Decision by Clarifying that Plaintiff's Breach of Fiduciary Duty Claim Is to Restore Losses to the Plan Under ERISA Section 502(a)(2); Defendants Will Not Be Prejudiced by the Amendment and the Amended Claim Is Not Futile.**

The existing allegations in Claim III of the first amended complaint state that the trustees breached their fiduciary duties by, inter alia, failing to collect contributions due the Plan and miscalculating the Plan's liabilities, causing the Plan to be only 55% funded by the time it was terminated. In her Prayer for Relief, Plaintiff asked the Court to declare that the trustees "failed to comply with their fiduciary duties in the collection, accounting, and distribution of the plan's assets" and "[a]ward such other legal, equitable and remedial relief...to give effect to the Court's declarations."  See Am. Cmplt. ¶¶ 33, C, and D. This Court determined, however, that Plaintiff's existing allegations were insufficient to set forth a claim under ERISA §502(a)(2) because it "fails to reference §502(a)(2) or any proposed

recovery sought on behalf of the Plan," "focuses on individualized relief and does not request that any losses be restored to the Plan as a whole." Slip Op. at 9-10.

Plaintiffs' proposed second amended Complaint clarifies her breach of fiduciary duty claim and the relief sought for it under Section 502(a)(2) in order to cure the deficiencies identified by the Court.  Specifically, the amended Claim III further details the ways in which the Defendant trustees caused losses to the Plan and breached their fiduciary duties under ERISA.  See Proposed Cmplt., ¶¶ 33 - 38.[2]  The Complaint also adds a new paragraph in the Prayer for Relief which requests that the Court order the trustees to "restore all losses to the Plan as a whole and disgorge the contributions that should have been paid to the Plan pursuant to ERISA §502(a)(2), 29 U.S.C. §1132(a)(2)."  See ¶ D.  In addition, proposed Paragraph E (originally Paragraph D of the Prayer for Relief) is revised to request that the Court "award such other legal, equitable and remedial relief as the Court deems appropriate to restore all losses to the Plan as a whole...."

Plaintiff's Second Amended Complaint thus clarifies the prior allegations

---

[2]  As further support, the proposed Complaint attaches an affidavit from Gerald Feder, the founder of the Defendant law firm and original sponsor and fiduciary of the Plan. Mr. Feder's affidavit confirms the allegations that the Plan was underfunded since 2001 and that Defendant trustees increased their salaries rather than funding the Plan, resulting in decreased benefits for Plaintiff and other Plan participants.  See Feder Affidavit ¶¶ 7-12.

6

and prayer for relief and does not add any new legal claims or theories.  See

Mississippi Ass'n of Coops. v. Farmers Home Admin., 139 F.R.D. 542, 544

(D.D.C. 1991) ("Generally, where leave to amend has been granted, the amended

complaint has related in a substantive way to the original complaint").  Because

this case is still in the early stages, and discovery has yet to be taken, Defendants

cannot show that they will be prejudiced by the amendment.  See Darbeau v.

Progressive Tech. Fed. Sys., 2007 WL 744726, *1 (D.D.C. 2007) ("Since no

discovery has been taken to date, defendant would not be prejudiced by plaintiff's

new theory of liability, which is based substantially on the same facts alleged in

the original complaint and plaintiff's EEOC charge").

Defendants also cannot demonstrate that Plaintiffs' amended Section

502(a)(2) claim would be futile.  "An amendment is considered futile if the

proposed complaint would not survive a motion to dismiss." Pharm. Research &

Mfrs. of Am. v. Thompson, 259 F. Supp. 2d 39, 59 (D.D.C. 2003); accord,

Robinson v. Detroit News, Inc., 211 F. Supp. 2d 101, 114 (D.D.C. 2002) ("An

amendment would be futile if it merely restates the same facts as the original

complaint in different terms, reasserts a claim on which the court previously ruled,

fails to state a legal theory, or could not withstand a motion to dismiss").  Here,

accepting Plaintiffs' allegations, Defendants will be unable to demonstrate that

7

Plaintiff can prove no set of facts in support of her amended Section 502(a)(2) claim that would entitle her to relief.  Indeed, Defendants' only argument in their prior Reply that a §502(a)(2) claim was not cognizable was because "Plaintiff seeks individualized relief in the form of money damages" and not "relief for the Plan on behalf of the Plan."  See Reply (dkt. #16) at 5-7.  To address that argument, which parallels the deficiencies identified in the Court's decision, the proposed second amended Complaint amends the prayer to specifically state that Plaintiff seeks the restoration of losses to the Plan caused by the trustees' breaches.

The Third, Sixth, and Seventh Circuits have all recently held, moreover, that the fact that the restoration of losses to the Plan will subsequently result in an increased payment to an individual participant does not alter or defeat a §502(a)(2) action.  See Pfahler v. National Latex Products Co., __F.3d__, 2007 WL 4395155, *7 (6th Cir. Dec. 14, 2007) ("[T]he fact that damages awarded to the Plan may provide plaintiffs with an indirect benefit, the payment of their claims, does not convert their derivative suit into an action for individual relief"; to hold otherwise "would have the effect of precluding the vast majority of §502(a)(2) suits"); Graden v. Conexant Systems, 496 F.3d 291, 297 (3d Cir. 2007) ("[T]he very premise of the suit is that the plan itself improperly lost money, [plaintiff] sued to

make good on the loss. If successful, this suit will restore assets to the plan that are allocable to Graden's account, and he will then get a distribution from that restored account. Far from creating problems, this is exactly the process that §1132(a)(2) – borrowing from trust law – contemplates"); *Harzewski v. Guidant*, 489 F.3d 799, 807 (7th Cir. 2007) ("[a] breach of fiduciary duty that diminishes th[e] value [of the participant's account] gives rise to a claim for benefits measured by the difference between what the retirement account was worth when the employee retired and cashed it out and what it would have been worth then had it not been for the breach of fiduciary duty").

Here, Plaintiff's proposed Complaint alleges that the Defendant trustees breached their fiduciary duties by causing the Plan's funding status to decrease from nearly 100% to 55%, failing to collect all contributions due after the 2001 plan year, increasing their own salaries without regard for the Plan's funding, and miscalculating the Plan's liabilities. On behalf of the Plan, Plaintiff requests that Defendants restore all losses to the Plan caused by these breaches. Because Defendants will not be prejudiced by amendment of the Complaint and the amendment will not be futile, this Court should grant leave to amend and provide Plaintiff an opportunity to "test this claim on the merits."

9

**Conclusion**

For the foregoing reasons, Plaintiff's motion for leave to amend the

Complaint should be granted.

DATED: January 16, 2008

Respectfully submitted,

 /s/ Stephen R. Bruce
Stephen R. Bruce (D.C. Bar. No. 289066)
Allison C. Caalim (D.C. Bar No. 494372)
805 15th St., NW, Suite 210
Washington, D.C. 20005
(202) 371-8013
(202) 371-0121 (f)
stephen.bruce@prodigy.net

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COLUMBIA**

| | |
|---|---|
| DENISE M. CLARK, ) | |
| 11101 Old Coach Rd., Potomac, MD 20854, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| FEDER SEMO and BARD, P.C., ) | 07 CV 470 (JDB) |
| 1350 Connecticut Ave., N.W., Suite 600, ) | |
| Washington, DC 20036; ) | |
| FEDER SEMO and BARD, P.C. ) | |
| RETIREMENT PLAN and TRUST, ) | |
| 1350 Connecticut Ave., N.W., Suite 600, ) | |
| Washington, D.C. 20036; ) | |
| JOSEPH E. SEMO, ) | |
| 6530 Bradley Blvd., Bethesda, MD 20817; ) | |
| HOWARD M. BARD, ) | |
| 1726 21st St., N.W., Washington, DC 20009, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**AFFIDAVIT OF GERALD M. FEDER**

1. My name is Gerald M. Feder. I am a resident of the State of Florida.

2. In 1974, I founded the law firm, which, by 2002 became Feder Semo & Bard, PC, (law firm). In the 1980s, as sole proprietor of the predecessor firm, I was the original sponsor and fiduciary of the retirement plan and trust which, in 2002 became the Feder Semo and Bard, P.C. Retirement Plan and Trust (plan), Defendants in this action.

3. I retired from the law firm on December 31, 2001, when I sold the firm to Joseph Semo, Denise Clark, and Howard Bard, The Agreement included a five year consulting arrangement which provided a method for calculating the amount of payments over the five year period.

4. As of January 1, 2002, I had no further ownership interests in the law firm, although the law firm was permitted to continue using my name for five years. During that period of time, I was committed to providing services for the firm particularly with

respect to client relationships. During that time I also provided fee-generating legal services for two of the firm's principal clients.

5. As of December 31, 2001, to my knowledge, the plan had been fully funded. I ceased serving as Trustee of the Plan in early 2002. With the exception of the first two years of the plan's existence, during which the sponsor funded initial past service liabilities for its employees, the law firm, on an annual basis, had contributed to the plan the maximum amount permitted by the Internal Revenue Code, as calculated by the plan's actuary. As a result, the amount in each participant's account was fully funded.

6. Ms. Clark stepped down from managing partner duties in May 2002. I was aware at that time that the plan's funding obligation for the previous year had been fulfilled.

7. In the summer of 2002, Denise Clark, who had been managing partner of the firm and fiduciary of the plan, left the law firm.

8. Under the terms of my Agreement, I was provided with information regarding the law firm's gross monthly income for purposes of verifying the law firm's calculations of the payments to which I was entitled. I was not routinely provided with information regarding the law firm's expenses.

9. In 2003 I learned that the law firm shareholders had decided to discontinue future accruals to the plan.

10. Then, in 2005, the shareholders learned of the loss of the law firm's largest client. The shareholders inquired about my willingness to join them in foregoing a part of our respective retirement benefits should they terminate the plan. They informed me that if the plan were terminated, the benefits of the non-highly compensated participants would be fully protected and that the benefits payable to other participants would be reduced by a factor of approximately 25%. I tentatively agreed on condition that the benefits of Denise Clark and Robert Landau would be fully protected. Clark and Landau were formerly highly compensated employees who were no longer with the firm and who had no control over the decision to terminate. I requested copies of financial documents which would explain how the plan had become underfunded.

11. The documentation confirmed that the law firm had ceased fully funding the plan in 2003 or 2004 and that, at the same time, the shareholders were meaningfully increasing their own compensation.

12. In the late summer of 2005, the shareholders informed me that the actuaries had recalculated the available funds for distribution to participants in the event of termination would result in a loss of approximately 45% of the benefits due to all highly compensated employees. Although I had not had any discussions with Clark or Landau, I advised the shareholders that their decision to terminate the plan would likely lead to litigation by Clark or Landau or both, in my view.

13. My remaining outstanding benefits were reduced by approximately 45%. I know that Clark's benefit has similarly been reduced. I was advised by the shareholders and their Pension attorney that the same reduction would be applied to others. I do not know whether the reduction was applied to any non-highly compensated participants.

SO SAYETH THE AFFIANT:                    DATED:


_____                 _____

Gerald Marvin Feder

13. My remaining outstanding benefits were reduced by approximately 45%. I know that Clark's benefit has similarly been reduced. I was advised by the shareholders and their Pension attorney that the same reduction would be applied to others. I do not know whether the reduction was applied to any non-highly compensated participants.


SO SAYETH THE AFFIANT:                          DATED:


_____                          $^{1}$/15/08  _____
Gerald Marvin Feder

**Clark v. Feder Semo and Bard, P.C., et al., C.A. 07-470 (JDB)**

# EXHIBIT 1
# (REDLINE)

**Plaintiff's Memorandum in Support of Motion for Leave to Amend Complaint**

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COLUMBIA

|  |  |  |
|---|---|---|
| DENISE M. CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 07 CV-470 (JDB) |
| | ) | |
| FEDER SEMO and BARD, P.C., | ) | |
| FEDER SEMO and BARD, P.C. | ) | |
| RETIREMENT PLAN and TRUST, | ) | |
| JOSEPH E. SEMO, | ) | |
| HOWARD M. BARD, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **SECOND AMENDED COMPLAINT**

This Complaint concerns the loss of almost 50% of the value of the Plaintiff's retirement benefits in violation of ERISA's "anti-cutback" protection for accrued benefits and, ERISA's disclosure requirements and fiduciary duties as well as losses to the Plan as a whole resulting from the trustees' mishandling of the Plan's assets in violation of their fiduciary duties. In conjunction with the termination of a pension plan, Defendants eliminated an annuity option and an actuarially-equivalent lump sum option and required participants to accept severely-discounted distributions, which caused the Plaintiff to lose nearly one-half of the value of her retirement benefits. In violation of ERISA's disclosure requirements, the summary plan description ("SPD") never disclosed the potential

for any such losses on a plan termination. In violation of their fiduciary duties, the

trustees ignored these protective rules and failed to marshal and properly distribute

all of the plan's assets to participants, causing losses to the Plan as a whole.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the subject matter of this action

pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). 29

U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

2.      Venue is proper in this Court under 29 U.S.C. § 1132(e) because

Feder, Semo and Bard, P.C., the Feder, Semo and Bard P.C. Retirement Plan and

Trust, and Defendant Howard M. Bard reside or may be found in the District of

Columbia, because the Retirement Plan is administered in the District of

Columbia, and because Plaintiff Denise M. Clark worked and earned benefits in

the District and the breaches of duty took place in this District.

## THE PARTIES

3.      Plaintiff Denise Clark resides in Potomac, Maryland. Ms. Clark

worked in the District of Columbia for Feder, Semo and Bard, P.C. as an attorney

beginning in 1993. She became managing partner of the law firm in October 2000.

She terminated employment with the firm on July 31, 2002, and currently is the

General Counsel for the Hotel Employees and Restaurant Employees International

Union Welfare and Pension Funds in Aurora, Illinois. Ms. Clark is a "participant" in the Feder, Semo and Bard, P.C. Retirement Plan and Trust under ERISA § 3(7), 29 U.S.C. §1002(7).

4.    Defendant Feder, Semo and Bard, P.C. is a corporation organized in the District of Columbia.  Feder, Semo and Bard, P.C., was a law firm specializing in employee benefits law until September 30, 2005. The firm ceased the active practice of law on that date but continues to exist as a corporation. Defendant Feder, Semo and Bard, P.C., is the "plan sponsor" for the Feder, Semo and Bard, P.C. Retirement Plan and Trust within the meaning of ERISA § 3(16)(B), 29 U.S.C. §1002(16)(B). Defendant Feder, Semo and Bard, P.C., also serves as the "Plan administrator" for the Feder, Semo and Bard, P.C. Retirement Plan and Trust within the meaning of ERISA § 3(16)(A), 29 U.S.C. §1002(16)(A). As the Plan administrator, Feder, Semo and Bard, P.C., is a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. §1002(21)(A).

5.    Defendant Feder, Semo and Bard, P.C. Retirement Plan and Trust (hereafter the "Feder Semo Retirement Plan" or "Retirement Plan") is a defined benefit retirement plan for the current and former employees of the law firm of Feder, Semo and Bard, P.C. The Feder Semo Retirement Plan is an "employee benefit plan" as defined in ERISA § 3(3), 29 U.S.C. §1002(3), and an "employee

pension benefit plan" as defined in ERISA § 3(2)(A), 29 U.S.C. §1002(2)(A). The

Retirement Plan can be found in the District of Columbia because it was

administered from the District of Columbia and because employees earned and

received benefits in the District of Columbia.

6.      Defendants Joseph E. Semo and Howard M. Bard are trustees for the

Feder Semo Retirement Plan. As trustees, Messrs. Semo and Bard are "fiduciaries"

for the Retirement Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C.

§1002(21)(A).

## FACTUAL ALLEGATIONS

7.      After nearly 10 years of service, Plaintiff Denise Clark terminated her

employment with Feder, Semo and Bard, P.C. on July 31, 2002. As a result of her

service, she was vested under the Retirement Plan and had a right to receive her

accrued benefits.

8.      Section 8.4 of the Retirement Plan document, as restated on October

1, 2002, is titled "Timing of Distribution." It provides that:

> if a Participant's Accrued Benefit exceeds $15,000, such Participant's
> benefit...shall not be distributed earlier than (1) the completion of the Plan's
> valuation following the fifth (5th) anniversary of the Participant's
> termination of employment, (2) death, (3) the attainment of the Participant's
> Normal Retirement Date or (4) if the Participant has at least five (5) Years
> of Service, the attainment of age 63 and incurrence of a one-year Break-in-
> Service.

4

9.    Section 8.3(a) of the Retirement Plan document is titled "Rules for Calculating Optional Forms of Benefits."  It provides that:

> In no event shall the present value of any amount determined under this Section 8.3 be less than the greater of the present value of Accrued Benefit determined by using (1) the Actuarial Equivalent or (2) the applicable interest rate and applicable mortality table as determined under Sections (b) and (c) below.

10.    Prior to September 2005, Ms. Clark expected that she would receive her accrued benefits in the form of an annuity, or else as a lump sum based on the present value of that annuity on or after August 1, 2007, five years after she terminated her employment.

11.    On or about September 5, 2003, the Board of Directors of Feder, Semo, and Bard, P.C. amended the Retirement Plan to freeze the accrual of future retirement benefits effective after September 30, 2003.

12.    On or about July 29, 2005, a "Second Amendment" to the Retirement Plan was adopted effective August 1, 2005.  This amendment provided that "the distribution restrictions set forth in the first sentence to this Section 8.4 apply only to Participants who are or have been a shareholder of the Employer on or after December 31, 2004."

13.    Because Ms. Clark was not a shareholder of Feder, Semo & Bard, P.C. on or after December 31, 2004, she should have been able to take a lump sum

5

distribution equal to the present value of her annuity immediately after August 1, 2005.

14.    Ms. Clark received a letter on or about September 2, 2005, stating that she was eligible to receive her accrued benefit.  The accompanying benefit statement indicated that her accrued benefit was $4,860.55 per month beginning at age 65.

15.    On September 26, 2005, the Board of Directors of Feder, Semo and Bard, P.C. approved an amendment to terminate the Retirement Plan effective on that date.

16.    On September 30, 2005, Ms. Clark received a second letter from Feder, Semo and Bard, P.C. informing participants of the plan termination and stating that "all benefits will be distributed" as a result.  The attached benefits statement indicated that Ms. Clark's lump sum benefit would be $166,541.71.  The statement did not offer her an annuity of $4,860.55 per month or the option of receiving a lump sum payment based on the actuarial present value of that annuity.

17.    On or after September 30, 2005, Ms. Clark requested a lump sum distribution of the $166,541.71 amount and reserved the right to pursue any difference between that distribution and the value of her accrued benefits.

18.    On October 5, 2005, William Anspach, outside counsel for Defendant

Feder, Semo, and Bard, P.C., sent Ms. Clark an e-mail which informed her that the lump sum actuarial equivalent of her $4,860.55 annuity benefit was actually $312,380.83 as of October 31, 2005, but her benefits had been "pro-rata reduced to match the plan's assets."

19.    On October 17, 2005, Ms. Clark hand-delivered a formal written appeal of her benefit calculation to Defendant Feder, Semo and Bard, P.C.

20.    In a letter dated December 14, 2005, Mr. Anspach responded to Ms. Clark's appeal by stating that her benefit was calculated correctly and denying the claim.

21.    Based on the facts recited above, counsel for Ms. Clark requested reconsideration of the denial in letters dated January 6, 2006, and June 13, 2006. Mr. Anspach's responses on February 14, 2006 and August 15, 2006 characterized Ms. Clark's entitlement to $312,380.83 as a "windfall" from the application of lower "GATT" interest rates in computing the lump sum amount and denied that any optional forms of distribution had been eliminated.

## CLAIM ONE

## REDUCTION OR ELIMINATION OF OPTIONAL FORMS OF BENEFIT IN VIOLATION OF ERISA SECTION 204(G)'s "ANTI-CUTBACK" RULE

22.    The preceding factual allegations are hereby included as if set forth at

7

length.

23.     The reduction or elimination of an optional form of benefit invokes the protections of ERISA § 204(g)(2), 29 U.S.C. §1054(g)(2). "For purposes of this section, a plan amendment includes any changes to the terms of a plan, including changes resulting from ... a plan termination." Treas. Reg. 1.411(d)-3(a)(1); see also Treas. Reg. 1.411(d)-4, Q&A-2(a)(3)(ii)(B), Example (2); Revenue Ruling 85-6, 1985-1 C.B. 133; S. Rep. No. 98-575, at 31, 1984 U.S.C.C.A.N. 2547, 2577 ("The bill does not provide an exception to the prohibition against reduction of benefits or elimination of benefit options in the case of a terminated plan"); *Gillis v. Hoechst Celanese Corp.*, 4 F.3d 1137, 1150 (3d Cir. 1995) (Alito, concurring); *Aldridge v. Lily-Tulip*, 953 F.2d 587, 590 (11th Cir. 1992).

24.     Optional forms of benefits are protected against changes that are made "directly or indirectly" or through "multiple" or "serial" amendments. Treas. Reg. 1.411(d)-3(a)(2)(ii) and (iii); Treas. Reg. 1.411(d)-4, Q&A-2(c). Thus, if a plan sponsor adopts an amendment to terminate a plan and optional forms of benefit are directly or indirectly reduced as a result, ERISA § 204(g) is violated.

25.     Sections 8.3 and 8.4 of the Retirement Plan document as restated on October 1, 2002, provided Ms. Clark with an annuity option at normal retirement

8

age or the option of taking a lump sum actuarial equivalent of the normal

retirement benefit five years after a termination of employment, i.e., on or after

August 1, 2007. The "Second Amendment" dated July 29, 2005 moved this

eligibility date up to August 1, 2005.

26.    Under ERISA § 204(g)(2), these optional forms of benefit could not

be reduced or eliminated with respect to "accrued benefits." See also Treas. Reg.

1.411(d)-4; *Arakelian v. National Western Life Ins. Co.*, 724 F.Supp. 1033, 1035

(D.D.C. 1989) ("surrender charges" imposed on lump sum distributions violated

ERISA 204(g)); *Counts v. Kissack Water and Oil*, 986 F.2d 1322, 1323-25 (10th

Cir. 1993) (amendment eliminating lump sum option violated § 204(g)(2)); *Kiefer*

*v. Ceridian Corp*., 976 F.Supp. 829, 846-47 (D.Minn. 1997) (change in

computational methodology reducing benefits violated anti-cutback rule; plan's

"efforts to conform to [Tax Reform Act] does not allow them to violate ERISA

itself"); *Auwater v. Donohoe Paper Sales Corp. Defined Benefit Pension Plan*,

802 F.Supp. 830, 838 (E.D.N.Y. 1992) ("an optional form of benefit, such as the

lump sum option" "cannot be eliminated by Plan Amendment").

27.    Ms. Clark's accrued benefits equaled $4,860.55. Under ERISA, the

right to receive those benefits as an annuity or to elect the present value of those

benefits on or after August 1, 2007 (or August 1, 2005 under the "Second

9

Amendment") cannot be reduced or eliminated. Paying Ms. Clark only a little over one-half of those benefits is a reduction or elimination of her accrued benefits.

## CLAIM TWO

## <u>VIOLATIONS OF ERISA'S DISCLOSURE REQUIREMENTS</u>

28.     The United States Department of Labor's regulations on ERISA disclosures provide that if a plan is "not insured" by the Pension Benefit Guaranty Corporation, the summary plan description ("SPD") for the plan shall contain "a statement of this fact, and [the] reason for the lack of insurance." 29 C.F.R. 2520.102-3(m)(1). The regulations further mandate that the SPD must contain a statement "clearly identifying circumstances which may result in [the] loss ... of any benefits that a participant might otherwise reasonably expect the plan to provide on the basis of the description of benefits." 29 C.F.R. 2520.102-3(l).

29.     The SPD for the Feder Semo Retirement Plan stated that:

> Benefits under this Plan are insured by the PBGC if this Plan has more than 25 participants. If PBGC covers the Plan and, on termination, if the Plan does not have sufficient assets to pay the benefit, the PBGC will provide all or part of that benefit.

30.     The summary annual report for the plan year ending September 30, 2004, showed that the Feder Semo Retirement Plan had 28 participants and the actuarial report for 2001 showed that it had 30 participants.

10

31.     The SPD did not state that the Retirement Plan was "not insured" by PBGC, nor did it state any reason for a lack of insurance.

32.     There was also no statement in the SPD "clearly identifying circumstances which may result in [the] loss of the benefits" that the Retirement Plan otherwise described and promised to provide.

**CLAIM THREE**

**BREACHES OF ERISA'S FIDUCIARY DUTIES**

33.     Upon information and belief, the underfunding of the Plan which resulted in the approximately 47% shortfall in the distribution to the Plaintiff was due in whole or in part to ~~breaches of fiduciary duty under ERISA §404, 29 U.S.C. §1104,~~ actions or inactions by the Plan's trustees~~, including: (1) allowing~~.

34.     The trustees allowed the Plan's funded status to dwindle from close to 100% funding at the end of 2001 to less than 55% funding without taking appropriate actions to maintain the Plan~~, (2) failing~~.

35.     The trustees failed to collect all contributions due the Retirement Plan after the 2001 plan year~~, (3) miscalculating~~ and increased their salaries to the exclusion of funding the Plan.

36.     The trustees miscalculated the Plan's liabilities to the former owner and principal partner of the law firm, and/or counting some or all of the plan's

11

liabilities to him twice, and (4).

37.     The trustees otherwise mishandlingmishandled and negligently failingfailed to supervise or review the accounting of the Plan's liabilities to participants and the collection, marshaling, and distribution of its assets.

38.     The Plan's trustees breached their fiduciary duties under ERISA §404, 29 U.S.C. §1104 in the collection, accounting, and distribution of the Plan's assets, resulting in losses to the Plan as a whole.

39.     The trustees have also breached their fiduciary duties under ERISA §404(a)(1)(D) by failing to protect accrued benefits, including benefit options, and by failing to disclose the plan's lack of insurance and the consequences of plan termination as set out in Claims One and Two.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays that this Court:

A.     Declare that the reduction or elimination of the annuity benefit and the option providing Ms. Clark with the lump sum actuarial equivalent of her accrued benefit violates ERISA § 204(g) because it unlawfully reduces or eliminates optional forms of benefit.

B.     Declare that the statements in the SPD on whether the Feder Semo

12

Retirement Plan is insured do not comply with ERISA's disclosure requirements and that the SPD fails to identify any circumstances in which a participant's entitlement to accrued benefits can be reduced to close to one-half of their value.

C.     Declare that the trustees failed to comply with their fiduciary duties in the collection, accounting, and distribution of the plan's assets and their duties to comply with ERISA's minimum accrual standards and disclosure requirements.

D.     Order the trustees to restore all losses to the Plan as a whole and disgorge the contributions that should have been paid to the Plan pursuant to the authority in ERISA §502(a)(2), 29 U.S.C. §1132(a)(2).

DE.     Award such other legal, equitable and remedial relief as the Court deems appropriate to restore all losses to the Plan as a whole and ensure the Plaintiff's receipt of all retirement benefits required to give effect to the Court's declarations.

EF.     Order the Defendants to pay interest, attorneys' fees and expenses.

**DATED** this 1st     day of June            20078.

Respectfully submitted,

 /s/ Stephen R. Bruce
Stephen R. Bruce
D.C. Bar No. 289066
805 15th St., NW, Suite 210
Washington, D.C. 20005

13

(202) 371-8013
stephen.bruce@prodigy.net

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DENISE M. CLARK,                                )
                                                )
                              Plaintiff,         )
                                                )
        v.                                      )          Civil Action No. 07 CV 470 (JDB)
                                                )
FEDER SEMO and BARD, P.C.,                      )
FEDER SEMO and BARD, P.C.                       )
RETIREMENT PLAN and TRUST,                      )
JOSEPH E. SEMO, and                             )
HOWARD M. BARD,                                 )
                                                )
                              Defendants.        )
_____                  )


## <u>PROPOSED ORDER</u>

Upon consideration of Plaintiff's motion for leave to amend the complaint,

Defendants' response thereto, and the entire record in this matter, it is this ___ day

of _____, 2008, hereby **ORDERED** that Plaintiff's motion is

**GRANTED**.


                                        _____
                                        JOHN D. BATES
                                        United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COLUMBIA

| | |
|---|---|
| DENISE M. CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 07 CV-470 (JDB) |
| ) | |
| FEDER SEMO and BARD, P.C., ) | |
| FEDER SEMO and BARD, P.C. ) | |
| RETIREMENT PLAN and TRUST, ) | |
| JOSEPH E. SEMO, ) | |
| HOWARD M. BARD, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## <u>SECOND AMENDED COMPLAINT</u>

This Complaint concerns the loss of almost 50% of the value of the Plaintiff's retirement benefits in violation of ERISA's "anti-cutback" protection for accrued benefits, ERISA's disclosure requirements and fiduciary duties as well as losses to the Plan as a whole resulting from the trustees' mishandling of the Plan's assets in violation of their fiduciary duties. In conjunction with the termination of a pension plan, Defendants eliminated an annuity option and an actuarially-equivalent lump sum option and required participants to accept severely-discounted distributions, which caused the Plaintiff to lose nearly one-half of the value of her retirement benefits. In violation of ERISA's disclosure requirements, the summary plan description ("SPD") never disclosed the potential

for any such losses on a plan termination. In violation of their fiduciary duties, the

trustees ignored these protective rules and failed to marshal and properly distribute

all of the plan's assets to participants, causing losses to the Plan as a whole.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the subject matter of this action

pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). 29

U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

2.      Venue is proper in this Court under 29 U.S.C. § 1132(e) because

Feder, Semo and Bard, P.C., the Feder, Semo and Bard P.C. Retirement Plan and

Trust, and Defendant Howard M. Bard reside or may be found in the District of

Columbia, because the Retirement Plan is administered in the District of

Columbia, and because Plaintiff Denise M. Clark worked and earned benefits in

the District and the breaches of duty took place in this District.

## THE PARTIES

3.      Plaintiff Denise Clark resides in Potomac, Maryland. Ms. Clark

worked in the District of Columbia for Feder, Semo and Bard, P.C. as an attorney

beginning in 1993. She became managing partner of the law firm in October 2000.

She terminated employment with the firm on July 31, 2002, and currently is the

General Counsel for the Hotel Employees and Restaurant Employees International

Union Welfare and Pension Funds in Aurora, Illinois. Ms. Clark is a "participant" in the Feder, Semo and Bard, P.C. Retirement Plan and Trust under ERISA § 3(7), 29 U.S.C. §1002(7).

4.    Defendant Feder, Semo and Bard, P.C. is a corporation organized in the District of Columbia.  Feder, Semo and Bard, P.C., was a law firm specializing in employee benefits law until September 30, 2005. The firm ceased the active practice of law on that date but continues to exist as a corporation. Defendant Feder, Semo and Bard, P.C., is the "plan sponsor" for the Feder, Semo and Bard, P.C. Retirement Plan and Trust within the meaning of ERISA § 3(16)(B), 29 U.S.C. §1002(16)(B). Defendant Feder, Semo and Bard, P.C., also serves as the "Plan administrator" for the Feder, Semo and Bard, P.C. Retirement Plan and Trust within the meaning of ERISA § 3(16)(A), 29 U.S.C. §1002(16)(A). As the Plan administrator, Feder, Semo and Bard, P.C., is a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. §1002(21)(A).

5.    Defendant Feder, Semo and Bard, P.C. Retirement Plan and Trust (hereafter the "Feder Semo Retirement Plan" or "Retirement Plan") is a defined benefit retirement plan for the current and former employees of the law firm of Feder, Semo and Bard, P.C. The Feder Semo Retirement Plan is an "employee benefit plan" as defined in ERISA § 3(3), 29 U.S.C. §1002(3), and an "employee

3

pension benefit plan" as defined in ERISA § 3(2)(A), 29 U.S.C. §1002(2)(A). The

Retirement Plan can be found in the District of Columbia because it was

administered from the District of Columbia and because employees earned and

received benefits in the District of Columbia.

6.      Defendants Joseph E. Semo and Howard M. Bard are trustees for the

Feder Semo Retirement Plan. As trustees, Messrs. Semo and Bard are "fiduciaries"

for the Retirement Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C.

§1002(21)(A).

## **FACTUAL ALLEGATIONS**

7.      After nearly 10 years of service, Plaintiff Denise Clark terminated her

employment with Feder, Semo and Bard, P.C. on July 31, 2002. As a result of her

service, she was vested under the Retirement Plan and had a right to receive her

accrued benefits.

8.      Section 8.4 of the Retirement Plan document, as restated on October

1, 2002, is titled "Timing of Distribution." It provides that:

> if a Participant's Accrued Benefit exceeds $15,000, such Participant's
> benefit...shall not be distributed earlier than (1) the completion of the Plan's
> valuation following the fifth (5th) anniversary of the Participant's
> termination of employment, (2) death, (3) the attainment of the Participant's
> Normal Retirement Date or (4) if the Participant has at least five (5) Years
> of Service, the attainment of age 63 and incurrence of a one-year Break-in-
> Service.

4

9.    Section 8.3(a) of the Retirement Plan document is titled "Rules for Calculating Optional Forms of Benefits."  It provides that:

> In no event shall the present value of any amount determined under this Section 8.3 be less than the greater of the present value of Accrued Benefit determined by using (1) the Actuarial Equivalent or (2) the applicable interest rate and applicable mortality table as determined under Sections (b) and (c) below.

10.    Prior to September 2005, Ms. Clark expected that she would receive her accrued benefits in the form of an annuity, or else as a lump sum based on the present value of that annuity on or after August 1, 2007, five years after she terminated her employment.

11.    On or about September 5, 2003, the Board of Directors of Feder, Semo, and Bard, P.C. amended the Retirement Plan to freeze the accrual of future retirement benefits effective after September 30, 2003.

12.    On or about July 29, 2005, a "Second Amendment" to the Retirement Plan was adopted effective August 1, 2005.  This amendment provided that "the distribution restrictions set forth in the first sentence to this Section 8.4 apply only to Participants who are or have been a shareholder of the Employer on or after December 31, 2004."

13.    Because Ms. Clark was not a shareholder of Feder, Semo & Bard, P.C. on or after December 31, 2004, she should have been able to take a lump sum

distribution equal to the present value of her annuity immediately after August 1, 2005.

14.    Ms. Clark received a letter on or about September 2, 2005, stating that she was eligible to receive her accrued benefit.  The accompanying benefit statement indicated that her accrued benefit was $4,860.55 per month beginning at age 65.

15.    On September 26, 2005, the Board of Directors of Feder, Semo and Bard, P.C. approved an amendment to terminate the Retirement Plan effective on that date.

16.    On September 30, 2005, Ms. Clark received a second letter from Feder, Semo and Bard, P.C. informing participants of the plan termination and stating that "all benefits will be distributed" as a result.  The attached benefits statement indicated that Ms. Clark's lump sum benefit would be $166,541.71.  The statement did not offer her an annuity of $4,860.55 per month or the option of receiving a lump sum payment based on the actuarial present value of that annuity.

17.    On or after September 30, 2005, Ms. Clark requested a lump sum distribution of the $166,541.71 amount and reserved the right to pursue any difference between that distribution and the value of her accrued benefits.

18.    On October 5, 2005, William Anspach, outside counsel for Defendant

6

Feder, Semo, and Bard, P.C., sent Ms. Clark an e-mail which informed her that the lump sum actuarial equivalent of her $4,860.55 annuity benefit was actually $312,380.83 as of October 31, 2005, but her benefits had been "pro-rata reduced to match the plan's assets."

19.    On October 17, 2005, Ms. Clark hand-delivered a formal written appeal of her benefit calculation to Defendant Feder, Semo and Bard, P.C.

20.    In a letter dated December 14, 2005, Mr. Anspach responded to Ms. Clark's appeal by stating that her benefit was calculated correctly and denying the claim.

21.    Based on the facts recited above, counsel for Ms. Clark requested reconsideration of the denial in letters dated January 6, 2006, and June 13, 2006. Mr. Anspach's responses on February 14, 2006 and August 15, 2006 characterized Ms. Clark's entitlement to $312,380.83 as a "windfall" from the application of lower "GATT" interest rates in computing the lump sum amount and denied that any optional forms of distribution had been eliminated.

## CLAIM ONE

### REDUCTION OR ELIMINATION OF OPTIONAL FORMS OF BENEFIT IN VIOLATION OF ERISA SECTION 204(G)'s "ANTI-CUTBACK" RULE

22.    The preceding factual allegations are hereby included as if set forth at

length.

23.     The reduction or elimination of an optional form of benefit invokes

the protections of ERISA § 204(g)(2), 29 U.S.C. §1054(g)(2).  "For purposes of

this section, a plan amendment includes any changes to the terms of a plan,

including changes resulting from ... a plan termination."  Treas. Reg. 1.411(d)-

3(a)(1); see also Treas. Reg. 1.411(d)-4, Q&A-2(a)(3)(ii)(B), Example (2);

Revenue Ruling 85-6, 1985-1 C.B. 133; S. Rep. No. 98-575, at 31, 1984

U.S.C.C.A.N. 2547, 2577 ("The bill does not provide an exception to the

prohibition against reduction of benefits or elimination of benefit options in the

case of a terminated plan"); *Gillis v. Hoechst Celanese Corp*., 4 F.3d 1137, 1150

(3d Cir. 1995) (Alito, concurring); *Aldridge v. Lily-Tulip*, 953 F.2d 587, 590 (11th

Cir. 1992).

24.     Optional forms of benefits are protected against changes that are

made "directly or indirectly" or through "multiple" or "serial" amendments. Treas.

Reg. 1.411(d)-3(a)(2)(ii) and (iii); Treas. Reg. 1.411(d)-4, Q&A-2(c). Thus, if a

plan sponsor adopts an amendment to terminate a plan and optional forms of

benefit are directly or indirectly reduced as a result, ERISA § 204(g) is violated.

25.     Sections 8.3 and 8.4 of the Retirement Plan document as restated on

October 1, 2002, provided Ms. Clark with an annuity option at normal retirement

age or the option of taking a lump sum actuarial equivalent of the normal

retirement benefit five years after a termination of employment, i.e., on or after

August 1, 2007. The "Second Amendment" dated July 29, 2005 moved this

eligibility date up to August 1, 2005.

26.    Under ERISA § 204(g)(2), these optional forms of benefit could not

be reduced or eliminated with respect to "accrued benefits." See also Treas. Reg.

1.411(d)-4; *Arakelian v. National Western Life Ins. Co.*, 724 F.Supp. 1033, 1035

(D.D.C. 1989) ("surrender charges" imposed on lump sum distributions violated

ERISA 204(g)); *Counts v. Kissack Water and Oil*, 986 F.2d 1322, 1323-25 (10th

Cir. 1993) (amendment eliminating lump sum option violated § 204(g)(2)); *Kiefer

v. Ceridian Corp.*, 976 F.Supp. 829, 846-47 (D.Minn. 1997) (change in

computational methodology reducing benefits violated anti-cutback rule; plan's

"efforts to conform to [Tax Reform Act] does not allow them to violate ERISA

itself"); *Auwater v. Donohoe Paper Sales Corp. Defined Benefit Pension Plan*,

802 F.Supp. 830, 838 (E.D.N.Y. 1992) ("an optional form of benefit, such as the

lump sum option" "cannot be eliminated by Plan Amendment").

27.    Ms. Clark's accrued benefits equaled $4,860.55. Under ERISA, the

right to receive those benefits as an annuity or to elect the present value of those

benefits on or after August 1, 2007 (or August 1, 2005 under the "Second

9

Amendment") cannot be reduced or eliminated. Paying Ms. Clark only a little over one-half of those benefits is a reduction or elimination of her accrued benefits.

## CLAIM TWO

## <u>VIOLATIONS OF ERISA'S DISCLOSURE REQUIREMENTS</u>

28.    The United States Department of Labor's regulations on ERISA disclosures provide that if a plan is "not insured" by the Pension Benefit Guaranty Corporation, the summary plan description ("SPD") for the plan shall contain "a statement of this fact, and [the] reason for the lack of insurance." 29 C.F.R. 2520.102-3(m)(1). The regulations further mandate that the SPD must contain a statement "clearly identifying circumstances which may result in [the] loss ... of any benefits that a participant might otherwise reasonably expect the plan to provide on the basis of the description of benefits." 29 C.F.R. 2520.102-3(l).

29.    The SPD for the Feder Semo Retirement Plan stated that:

> Benefits under this Plan are insured by the PBGC if this Plan has more than 25 participants. If PBGC covers the Plan and, on termination, if the Plan does not have sufficient assets to pay the benefit, the PBGC will provide all or part of that benefit.

30.    The summary annual report for the plan year ending September 30, 2004, showed that the Feder Semo Retirement Plan had 28 participants and the actuarial report for 2001 showed that it had 30 participants.

10

31.     The SPD did not state that the Retirement Plan was "not insured" by PBGC, nor did it state any reason for a lack of insurance.

32.     There was also no statement in the SPD "clearly identifying circumstances which may result in [the] loss of the benefits" that the Retirement Plan otherwise described and promised to provide.

## CLAIM THREE

## <u>BREACHES OF ERISA'S FIDUCIARY DUTIES</u>

33.     Upon information and belief, the underfunding of the Plan which resulted in the approximately 47% shortfall in the distribution to the Plaintiff was due in whole or in part to actions or inactions by the Plan's trustees.

34.     The trustees allowed the Plan's funded status to dwindle from close to 100% funding at the end of 2001 to less than 55% funding without taking appropriate actions to maintain the Plan.

35.     The trustees failed to collect all contributions due the Retirement Plan after the 2001 plan year and increased their salaries to the exclusion of funding the Plan.

36.     The trustees miscalculated the Plan's liabilities to the former owner and principal partner of the law firm, and/or counting some or all of the plan's liabilities to him twice.

37.    The trustees otherwise mishandled and negligently failed to supervise or review the accounting of the Plan's liabilities to participants and the collection, marshaling, and distribution of its assets.

38.    The Plan's trustees breached their fiduciary duties under ERISA §404, 29 U.S.C. §1104 in the collection, accounting, and distribution of the Plan's assets, resulting in losses to the Plan as a whole.

39.    The trustees have also breached their fiduciary duties under ERISA §404(a)(1)(D) by failing to protect accrued benefits, including benefit options, and by failing to disclose the plan's lack of insurance and the consequences of plan termination as set out in Claims One and Two.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court:

A.    Declare that the reduction or elimination of the annuity benefit and the option providing Ms. Clark with the lump sum actuarial equivalent of her accrued benefit violates ERISA § 204(g) because it unlawfully reduces or eliminates optional forms of benefit.

B.    Declare that the statements in the SPD on whether the Feder Semo Retirement Plan is insured do not comply with ERISA's disclosure requirements and that the SPD fails to identify any circumstances in which a participant's

12

entitlement to accrued benefits can be reduced to close to one-half of their value.

C.    Declare that the trustees failed to comply with their fiduciary duties in the collection, accounting, and distribution of the plan's assets and their duties to comply with ERISA's minimum accrual standards and disclosure requirements.

D.    Order the trustees to restore all losses to the Plan as a whole and disgorge the contributions that should have been paid to the Plan pursuant to the authority in ERISA §502(a)(2), 29 U.S.C. §1132(a)(2).

E.    Award such other legal, equitable and remedial relief as the Court deems appropriate to restore all losses to the Plan as a whole and ensure the Plaintiff's receipt of all retirement benefits required to give effect to the Court's declarations.

F.    Order the Defendants to pay interest, attorneys' fees and expenses.

**DATED** this ___ day of _____ 2008.

Respectfully submitted,

/s/ Stephen R. Bruce____
Stephen R. Bruce
D.C. Bar No. 289066
805 15th St., NW, Suite 210
Washington, D.C. 20005
(202) 371-8013
stephen.bruce@prodigy.net

Attorney for Plaintiff

13