### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENISE M. CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 07 CV 470 (JDB) |
| | ) |
| FEDER SEMO and BARD, P.C., | ) |
| FEDER SEMO and BARD, P.C. | ) |
| RETIREMENT PLAN and TRUST, | ) |
| JOSEPH E. SEMO, and | ) |
| HOWARD M. BARD, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE AFFIDAVIT OF GERALD FEDER

Plaintiff opposes Defendants' motion to strike the affidavit of Gerald Feder. Mr. Feder's affidavit was submitted in support of a non-dispositive motion by Plaintiff for leave to file an amended Complaint. See Dkt. #19. Defendants contend that Mr. Feder's affidavit should be stricken because he signed it without the "verification" language authorized in 28 U.S.C. §1746 and Local Rule 5.1(h) ("I declare under penalty of perjury that the foregoing is true and correct"). Mr. Feder has prepared a corrected affidavit, which is attached, that contains that verification.

Motions to strike pleadings, or supporting material, are generally considered

"a drastic remedy disfavored by courts," Alexander v. Wash. Gas Light Co., 481 F. Supp. 2d 16, 38 (D.D.C. 2006), unless they include "redundant, immaterial, impertinent, or scandalous" material.  F.R.C.P. 12(f); accord, Wasserman v. Rodacker, 2007 U.S. Dist. LEXIS 5961, *6 (D.D.C. 2007); Nwachukwu v. Karl, 216 F.R.D. 176, 178 (D.D.C. 2003).  Here, Defendants have not shown that Mr. Feder's affidavit contains any "redundant, immaterial, impertinent, or scandalous" statement.  Instead, Defendants assert that his statement should be stricken because it would be inadmissible as evidence because of the lack of verification.  However, even in the context of dispositive motions, courts have denied similar motions when the defect is corrected and the affidavit is re-filed.  See, e.g., Kean v. NASA, 480 F. Supp. 2d 150, 155 (D.D.C. 2007) (motion to strike declarations denied as moot because defendant re-filed proper declarations with "penalty of perjury" language); Williams v. United States Army Corps of Eng'rs, 2007 U.S. Dist. LEXIS 56624, *12 (D.N.J. 2007) ("to disallow Plaintiff's amended certifications on technical grounds, particularly where she attempted to rectify the error before any judgment had been rendered on the issues, would not be in the interests of justice").

A second reason for denying Defendants' motion is because Defendants' counsel failed to confer with Plaintiff's counsel prior to filing it. Local Rule 7(m)

requires the moving party to "discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement."  See, e.g., <u>United States v. Massachusetts Housing Finance Agency</u>, 456 F.Supp.2d 46, 52 (D.D.C. 2006) ("Had MHFA's counsel taken real steps to confer with K&R's counsel, such as contacting K&R's counsel by telephone..., the parties may have been able to resolve or at least narrow the issues that the motion presents").

 Here, had Defendants contacted Plaintiff's counsel and objected to Mr. Feder's omission of the verification language, Plaintiff would have offered to have Mr. Feder prepare a corrected affidavit, as he ultimately did, to include the declaration provided in Local Rule 5.1(h).  Mr. Feder's omission of that language was simply inadvertent. In more than 40 years of practice, Mr. Feder regularly signed pleadings and filings under F.R.C.P. 11. Rule 11 only requires that a paper or filing be signed by the attorney and specifically states that it "need not be verified."  Based on that experience, Mr. Feder understood that a statement from him did not need to be verified because he serves as an officer of the Court. Because Mr. Feder is retired and residing in Florida without a scanner or fax machine, Plaintiff's counsel could not simply call him up to correct this omission

and resend the affidavit. Defendants were, of course, also not obligated to object to Mr. Feder's affidavit on this technical ground because it was submitted in support of a non-dispositive motion and was written by someone whom the Defendants know exceedingly well (since Mr. Feder founded the law firm).

"The obligation to confer may not be satisfied by perfunctory action, but requires a good faith effort to resolve the nondispositive disputes that occur in the course of litigation." United States ex rel. Pogue v. Diabetes Treatment Centers of America, 235 F.R.D. 521, 529 (D.D.C. 2006). "If a party files a nondispositive motion without certifying its compliance with Rule 7(m), the motion will be denied." Ellipso, Inc. v. Mann, 460 F.Supp.2d 99, 102 (D.D.C. 2006); United States v. Massachusetts Housing Finance Agency, supra, 456 F.Supp.2d at 52 (denying motion to strike affidavit where movant failed to confer; "MHFA merely genuflected to the letter of [Local Rule 7(m)] instead of trying in good faith to achieve its objectives").

**Conclusion**

Because Defendants' motion to strike rests on a purely technical objection that does not fall within the ambit of Rule 12(f) and because Defendants failed to confer with Plaintiff's counsel before filing their motion to strike as required by Local Rule 7(m), Defendants' motion to strike should be denied and Plaintiff

should be allowed to file the corrected affidavit of Gerald Feder.

DATED:   February 25, 2008

                              Respectfully submitted,

                              /s/ Stephen R. Bruce
                              Stephen R. Bruce (D.C. Bar. No. 289066)
                              Allison C. Caalim (D.C. Bar No. 494372)
                              805 15th St., NW, Suite 210
                              Washington, D.C. 20005
                              (202) 371-8013
                              (202) 371-0121 (f)
                              stephen.bruce@prodigy.net

                              Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this 25th day of February 2008, a true and correct copy of (1) Plaintiff's Opposition to Defendants' Motion to Strike Affidavit of Gerald Feder, (2) the corrected Affidavit of Gerald Feder, (3) the Proposed Order and (4) this Certificate of Service was sent via CM/ECF electronic filing, addressed to the following parties:

    Jason H. Ehrenberg
    James C. Bailey
    BAILEY & EHRENBERG PLLC
    1155 Connecticut Ave NW
    Suite 1100
    Washington, D.C. 20036

    Attorneys for Defendants

                                                    /s/ Stephen R. Bruce

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENISE M. CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 07 CV 470 (JDB) |
| | ) |
| FEDER SEMO and BARD, P.C., | ) |
| FEDER SEMO and BARD, P.C. | ) |
| RETIREMENT PLAN and TRUST, | ) |
| JOSEPH E. SEMO, and | ) |
| HOWARD M. BARD, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## PROPOSED ORDER

Upon consideration of Defendants' motion to strike the affidavit of Gerald Feder, Plaintiff's response, and the record in this matter, it is this ___ day of _____, 2008, hereby **ORDERED** that Defendants' motion is **DENIED**.

It is further **ORDERED** that the corrected affidavit of Gerald Feder, which includes a verification in accordance with 28 U.S.C. §1746, shall replace the affidavit filed under dkt. # 19.

_____
JOHN D. BATES
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COLUMBIA

DENISE M. CLARK,                                      )
11101 Old Coach Rd., Potomac, MD 20854,               )
                                                      )
                        Plaintiff,                    )
    vs.                                               )
                                                      )
FEDER SEMO and BARD, P.C.,                            )     07 CV 470 (JDB)
1350 Connecticut Ave., N.W., Suite 600,               )
Washington, DC 20036;                                 )
FEDER SEMO and BARD, P.C.                             )
RETIREMENT PLAN and TRUST,                            )
1350 Connecticut Ave., N.W., Suite 600,               )
Washington, D.C. 20036;                               )
JOSEPH E. SEMO,                                       )
6530 Bradley Blvd., Bethesda, MD 20817;               )
HOWARD M. BARD,                                       )
1726 21st St., N.W., Washington, DC 20009,            )
                                                      )
                        Defendants.                   )
_____)

**AFFIDAVIT OF GERALD M. FEDER**

1. My name is Gerald M. Feder. I am a resident of the State of Florida.

2. In 1974, I founded the law firm, which, by 2002 became Feder Semo & Bard, PC, (law firm). In the 1980s, as sole proprietor of the predecessor firm, I was the original sponsor and fiduciary of the retirement plan and trust which, in 2002 became the Feder Semo and Bard, P.C. Retirement Plan and Trust (plan), Defendants in this action.

3. I retired from the law firm on December 31, 2001, when I sold the firm to Joseph Semo, Denise Clark, and Howard Bard, The Agreement included a five year consulting arrangement which provided a method for calculating the amount of payments over the five year period.

4. As of January 1, 2002, I had no further ownership interests in the law firm, although the law firm was permitted to continue using my name for five years. During that period of time, I was committed to providing services for the firm particularly with

respect to client relationships. During that time I also provided fee-generating legal services for two of the firm's principal clients.

5. As of December 31, 2001, to my knowledge, the plan had been fully funded. I ceased serving as Trustee of the Plan in early 2002. With the exception of the first two years of the plan's existence, during which the sponsor funded initial past service liabilities for its employees, the law firm, on an annual basis, had contributed to the plan the maximum amount permitted by the Internal Revenue Code, as calculated by the plan's actuary. As a result, the amount in each participant's account was fully funded.

6. Ms. Clark stepped down from managing partner duties in May 2002. I was aware at that time that the plan's funding obligation for the previous year had been fulfilled.

7. In the summer of 2002, Denise Clark, who had been managing partner of the firm and fiduciary of the plan, left the law firm.

8. Under the terms of my Agreement, I was provided with information regarding the law firm's gross monthly income for purposes of verifying the law firm's calculations of the payments to which I was entitled. I was not routinely provided with information regarding the law firm's expenses.

9. In 2003 I learned that the law firm shareholders had decided to discontinue future accruals to the plan.

10. Then, in 2005, the shareholders learned of the loss of the law firm's largest client. The shareholders inquired about my willingness to join them in foregoing a part of our respective retirement benefits should they terminate the plan. They informed me that if the plan were terminated, the benefits of the non-highly compensated participants would be fully protected and that the benefits payable to other participants would be reduced by a factor of approximately 25%. I tentatively agreed on condition that the benefits of Denise Clark and Robert Landau would be fully protected. Clark and Landau were formerly highly compensated employees who were no longer with the firm and who had no control over the decision to terminate. I requested copies of financial documents which would explain how the plan had become underfunded.

11. The documentation confirmed that the law firm had ceased fully funding the plan in 2003 or 2004 and that, at the same time, the shareholders were meaningfully increasing their own compensation.

12. In the late summer of 2005, the shareholders informed me that the actuaries had recalculated the available funds for distribution to participants in the event of termination would result in a loss of approximately 45% of the benefits due to all highly compensated employees. Although I had not had any discussions with Clark or Landau, I advised the shareholders that their decision to terminate the plan would likely lead to litigation by Clark or Landau or both, in my view.

13. My remaining outstanding benefits were reduced by approximately 45%. I know that Clark's benefit has similarly been reduced. I was advised by the shareholders and their Pension attorney that the same reduction would be applied to others. I do not know whether the reduction was applied to any non-highly compensated participants.
14. I executed this statement on February 15, 2008, and that statement was previously presented to this court.
15. I restate the above and declare under penalty of perjury that the foregoing is true and correct.

SO SAYETH THE AFFIANT:                    EXECUTED ON:

_/s/ Gerald Marvin Feder_                  _FEB 21, 2008_
Gerald Marvin Feder

[Notary stamp: NEIL MCDONALD, Notary Public - State of Florida, My Commission Expires Feb 7, 2011, Commission # DD 637644, Bonded Through National Notary Assn.]

_/s/ Neil McDonald_
2/21/08