UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENISE M. CLARK,<br><br>　　Plaintiff/Counter-Defendant,<br><br>　　v.<br><br>FEDER SEMO and BARD, P.C., et al.,<br><br>　　Defendants/Counter-Claimants | Civil Action No.  07-470 (JDB) |
| DENISE M. CLARK,<br><br>　　Third-Party Plaintiff,<br><br>　　v.<br><br>MUCH SHELIST DENENBERG AMENT<br>& RUBENSTEIN, P.C., et al.,<br><br>　　Third-Party Defendants | |

**MEMORANDUM OPINION**

　　Plaintiff Denise Clark initiated this action against Feder, Semo and Bard, P.C. ("Feder Semo"), the Feder Semo retirement plan ("retirement plan" or "plan"), and plan trustees Joseph E. Semo and Howard M. Bard (collectively "defendants").  Clark asserts Employee Retirement Income Security Act ("ERISA") violations against defendants that allegedly led to the underfunding of the plan and resulted in a significant reduction of the present value of her retirement benefits.  Near the end of discovery, defendants filed a counterclaim against Clark for contribution and indemnity under ERISA and federal common law.  In response to the counterclaim, Clark filed a third-party complaint against Much Shelist Denenberg Ament &

Rubenstein, P.C. ("Much Shelist") and Pension Advisory Fund, Ltd., or Pension Advisory Group ("PAF") (together "third-party defendants"). Clark asserts claims for violations of ERISA and professional malpractice against third-party defendants. Currently before the Court are motions to dismiss filed by Much Shelist and PAF. For the reasons discussed below, both motions will be granted.

## BACKGROUND

Beginning in 1993, Clark worked as an attorney for Feder Semo in the District of Columbia. Third-Party Compl. ¶ 4. She was managing partner of the firm from October 2000 until May 2002, and left the firm on July 31, 2002. Id. Clark is a participant in the retirement plan and Feder Semo is the sponsor and administrator of the plan. Id. ¶¶ 4-5. In September 2005, after Feder Semo's largest client filed a professional malpractice suit against the firm, the retirement plan was terminated. Id. ¶¶ 12-13. At that time, Clark contends that the plan was underfunded by more than $1.1 million. Id. ¶ 13. The participants of the retirement plan, including Clark, allegedly received 53% of the present value of their retirement benefits. Id.

Clark contends that "wrong" and "unreasonable" advice from Much Shelist and PAF led to the plan's underfunding. See id. ¶¶ 22, 27, 32, 43-44. Much Shelist is a Chicago-based law firm that Feder Semo hired in or around the early 1990s to provide legal services related to the retirement plan. Id. ¶ 8. William N. Anspach, Jr. was the principal attorney from Much Shelist who provided these services. Id. ¶ 10. PAF is an actuarial consulting firm based in Vernon Hills, Illinois that Feder Semo hired around 2000 to provide actuarial services related to the retirement plan. Id. ¶ 9. Dennis Reddington was the only actuary from PAF who provided these services. Id. ¶ 10.

At the end of 2001, Gerald Feder, the founder and principal owner of Feder Semo, retired from active employment with the firm. Id. ¶ 11. Clark alleges that after Feder's retirement, Much Shelist and PAF gave Feder Semo "wrong" advice regarding lump sum distributions it made from the retirement plan to Mr. Feder and his wife, Loretta Feder. Id. ¶¶ 22, 27, 32. Clark asserts that on April 1, 2002, a lump sum distribution of $779,082 was made from the retirement plan to Mr. Feder. Id. ¶ 21. She contends that the distribution was made in reliance on advice from Much Shelist and PAF that was "wrong" because the plan was underfunded and thus, under Treasury regulations, distributions from the plan should have been restricted. Id. ¶ 22. Next, Clark alleges that on December 30, 2002, a lump sum distribution of $381,901 was made from the retirement plan to Mrs. Feder. Id. ¶ 26. She contends that this distribution was made in reliance on Much Shelist's and PAF's advice, which was incorrect because it left the retirement plan underfunded in violation of Treasury regulations. Id. ¶¶ 25, 27. Finally, in November 2005, Mr. Feder received another distribution, this time of $229,949. Id. ¶ 31. Clark alleges that this distribution, again made in reliance on Much Shelist's and PAF's advice, violated Treasury regulations because it gave Mr. and Mrs. Feder disproportionate benefits compared to other participants in the retirement plan. Id. ¶¶ 31, 32. Nonetheless, Clark contends that Much Shelist and PAF represented that their advice regarding these distributions complied with Treasury regulations. Id. ¶ 33.

Reddington of PAF allegedly advised Feder Semo shareholders on March 3, 2003 that the retirement plan was "significantly underfunded." Id. ¶ 35. Clark contends that on November 4, 2003, Reddington informed Feder Semo's office manager and Anspach that the retirement plan was "very underfunded on a payout basis." Id. ¶ 36. Nevertheless, PAF allegedly did not change

the plan's actuarial assumptions or funding requirements to address this issue. Id. ¶ 38. Hence, according to Clark, both PAF's retirement age and interest rate assumptions were unreasonable and contributed to the underfunding of the plan. Id. ¶¶ 43-44. Clark also contends that PAF continued to represent that "the actuarial assumptions and methods used to value the plan [were] reasonable" and represented the firm's "best estimate." Id. ¶¶ 39-40. Moreover, she asserts that although Anspach wrote an article recognizing that the type of interest rate assumptions used for the retirement plan could cause underfunding, he advised Feder Semo that the plan's interest rate assumptions were adequate. Id. ¶ 45.

According to Clark, in or around 2003, PAF determined that a pension classification mistake had caused her retirement benefits to be understated. Id. ¶ 50. PAF allegedly did not correct this mistake, nor did it act to make up the plan's minimum funding shortfall. Id. ¶ 52. Clark contends, then, that on November 16, 2005 -- despite his knowledge that her benefits were miscalculated -- Anspach approved the distribution of the retirement plan's assets to all participants. Id. ¶ 53. Shortly thereafter, on December 14, 2005, Clark allegedly received a letter from Anspach that led her to believe, mistakenly, that her benefits had been corrected. Id. ¶ 54. Clark also claims that on June 30, 2006, PAF incorrectly attested that her benefits were accurately stated. Id. ¶ 55.

On March 13, 2007, Clark initiated this action against defendants. Clark subsequently filed an amended complaint on June 1, 2007 and a second amended complaint on May 28, 2008. Clark alleges that defendants violated ERISA by reducing or eliminating her accrued benefits under the retirement plan, failing to disclose the retirement plan's lack of insurance, and breaching their fiduciary duties. On February 25, 2009, defendants filed a counterclaim against

Clark for contribution and indemnity under ERISA and federal common law. Am. Answer & Countercl. at 9. The counterclaim alleges that Clark was a fiduciary of the retirement plan for a period of time, during which she oversaw and approved the distribution of Mr. Feder's lump sum payment of approximately $780,000. Id. ¶¶ 43-44. According to counterclaimants, then, Clark was responsible for any breach or violation related to this distribution. Id. ¶¶ 47-49.

On March 30, 2009, in response to the counterclaim, Clark filed a third-party complaint against Much Shelist and PAF asserting claims for violations of ERISA and professional malpractice and seeking indemnification from third-party defendants.[1] On May 12, 2009, Much Shelist filed a motion to dismiss the third-party complaint and less than a week later PAF followed suit, filing its own motion to dismiss.[2]

## LEGAL STANDARD

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). Although "detailed

---

[1] Count I of the third-party complaint asserts "malpractice and ERISA violations in legal and actuarial advice on termination restrictions," Count II asserts "ERISA violations and professional malpractice in advice on actuarial assumptions for calculating minimum funding requirements," and Count III asserts "malpractice in benefit calculations and related funding requirements." The Court reads Counts I through III as asserting professional malpractice claims against third-party defendants and Counts I and II as asserting ERISA claims against third-party defendants.

[2] On April 6, 2009, Feder Semo filed a motion to strike the third-party complaint. Because the third-party complaint will be dismissed, Feder Semo's motion to strike will be denied as moot.

factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555-56; see also Papasan v. Allain, 478 U.S. 265, 286 (1986). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); Atherton v. District of Columbia Office of the Mayor, --- F.3d ---, 2009 WL 1515373, at *6 (D.C. Cir. 2009). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. This amounts to a "two-pronged approach" under which a court first identifies the factual allegations entitled to an assumption of truth and then determines "whether they plausibly give rise to an entitlement to relief." Id. at 1950-51.

The notice pleading rules are not meant to impose a great burden on a plaintiff. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512-13 (2002). When the sufficiency of a complaint is challenged by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should be liberally construed in his or her favor. Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94 (citing Twombly, 550 U.S. at 555-56). The plaintiff must be given every favorable inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111,

1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  Nor does the court accept "a legal conclusion couched as a factual allegation," or "naked assertions [of unlawful misconduct] devoid of further factual enhancement."  Iqbal, 129 S. Ct. at 1949-50 (internal quotation marks omitted); see also Aktieselskabet AF 21. November 21 v. Fame Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (explaining that the court has "never accepted legal conclusions cast in the form of factual allegations").

## ANALYSIS

I.  **ERISA Claims**

    A.  **Fiduciary Status Under ERISA**

Clark asserts that Feder Semo hired Much Shelist and PAF to provide legal and actuarial services, respectively, related to the retirement plan.  Third-Party Compl. ¶¶ 8-9.  Although Clark concedes that PAF is not a fiduciary under ERISA, see Pl.'s Opp'n to PAF Mot. at 14, she contends that Much Shelist knowingly participated in fiduciary breaches such that it functioned as a co-fiduciary with respect to the retirement plan, see Pl.'s Opp'n to Much Shelist Mot. at 9.  Clark argues that Much Shelist's role in providing legal services to the retirement plan went beyond the normal advisory role of a law firm.  Id. at 11.  She contends, then, that Much Shelist exercised sufficient discretion with respect to the plan to become an ERISA fiduciary.  See id.

Clark cites several examples in support of her contention.  First, she points to a letter dated September 30, 2005 in which Feder Semo told Clark to contact Anspach directly if she had questions about the retirement plan termination process.  Id.  Second, she contends that Anspach

signed a December 14, 2005 letter denying Clark's appeal of her benefits calculation.  Id.  Third, it was Anspach who allegedly decided to overlook an error made in calculating Clark's benefits.  Id.  Finally, according to Clark, defendants have admitted that they simply "followed" the advice of Anspach and thus they ceded their authority to him.  Id.

Attorneys and actuaries "performing their usual professional functions" will typically not be considered fiduciaries under ERISA.  29 C.F.R. § 2509.75-5.  According to the Department of Labor, an attorney or other consultant to a retirement plan is a fiduciary only if he or she "(a) exercises discretionary authority or discretionary control respecting the management of the plan, (b) exercises authority or control respecting management or disposition of the plan's assets, (c) renders investment advice for a fee, direct or indirect, with respect to the assets of the plan, or has any authority or responsibility to do so, or (d) has any discretionary authority or discretionary responsibility in the administration of the plan[.]"  Id.

Clark's allegations that Feder Semo simply "followed" Much Shelist's advice do not establish that Much Shelist's actions with respect to the plan rose to the level of discretionary authority.  As the Eleventh Circuit has observed, "[i]t cannot plausibly be considered consonant with the clear purpose of ERISA to deprive ERISA plans of access to ordinary legal advice. . . . Equally chilling would be a rule equating a law firm's advice in favor of a transaction with the named fiduciaries' actual decision to enter the transaction."  Useden v. Acker, 947 F.2d 1563, 1578 (11th Cir. 1991).  Clark's other factual allegations similarly fail to establish that Much Shelist's actions fell outside the scope of normal legal services.  Anspach's December 14, 2005 letter denying Clark's appeal of her retirement plan benefit calculation was written "on behalf of

[Feder Semo]." Pl.'s Opp'n to Much Shelist Mot., Ex. 3.[3] Neither this letter nor Anspach's role in explaining the plan termination process suggest that Much Shelist had discretionary authority with regard to the retirement plan's management, the disposition of its assets, or the administration of the plan, nor does Clark allege that Much Shelist provided investment advice for the plan. Because Much Shelist and PAF were not fiduciaries of the retirement plan under ERISA, any claim for recovery against them under that statute must be made on a nonfiduciary basis.

  **B.**  **Recovery from Nonfiduciaries Under ERISA**

PAF argues that legal relief under ERISA is limited to plan fiduciaries, and that Clark requested only legal, not equitable, remedies in her third-party complaint. PAF Mot. at 3-4. Clark responds that even if third-party defendants are not ERISA fiduciaries, they may still be sued under ERISA if they knowingly engaged in a breach of trust. Pl.'s Opp'n to Much Shelist Mot. at 8; Pl.'s Opp'n to PAF Mot. at 15. She acknowledges, however, that nonfiduciaries are subject only to equitable relief, which she contends she requested in her third-party complaint. Pl.'s Opp'n to PAF Mot. at 13.

Under ERISA, nonfiduciaries are subject only to "appropriate equitable relief," not money damages. Mertens v. Hewitt Assocs., 508 U.S. 248, 251, 253-55 (1993). Such equitable relief includes those categories of relief that were typically available in equity, such as injunction, mandamus, and restitution, but not compensatory damages. Id. at 256. Although

---

[3] This exhibit was specifically referenced in Clark's complaint, and hence the Court's reference to it does not convert this motion from a motion to dismiss under Fed. R. Civ. P. 12(b)(6) to a motion for summary judgment under Fed. R. Civ. P. 56. See Clifton v. Fed. Nat'l Mortgage Ass'n, No. 97-2302, 1998 WL 419741, at *1 (D.D.C. Jan 14, 1998).

Clark included a request for "other appropriate legal and equitable relief" in her third-party complaint, the core of her request for relief is undeniably legal in nature because her primary requests are for indemnification and compensatory damages.  Third-Party Compl. at 21.  Whether the relief sought lies in equity or in law depends not on applying an equitable label, but rather on "the basis for the plaintiff's claim and the nature of the underlying remedies sought."  Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 213 (2002) (citation omitted); Machinery Movers, Riggers & Machinery Erectors, Local 136 v. Nationwide Life Ins. Co., No. 03-C-8707, 2006 WL 2927607, at * 5 (N.D. Ill. Oct. 10, 2006) (citing Great-West Life, 534 U.S. at 213).  Clark's boilerplate request for "other legal and equitable relief" does not convert what is plainly a legal action for damages into one for equitable relief.  Consequently, Clark is unable to proceed against third-party defendants as nonfiduciaries.  Because Clark cannot recover from Much Shelist or PAF under ERISA on a fiduciary or nonfiduciary basis, all ERISA claims against both third-party defendants -- contained in Counts I and II of the third-party complaint -- will be dismissed.

**II.     Professional Malpractice Claims**

    **A.     Legal Malpractice Claims Against Much Shelist**

Much Shelist contends that Clark's legal malpractice claims against it must be dismissed because there is no attorney-client relationship between Clark and Much Shelist -- only between Much Shelist and Feder Semo.  See Much Shelist Mot. at 8.  Much Shelist argues that Clark's allegation that its services were for "her benefit" is not enough to allow Clark to sue Much Shelist for legal malpractice.  Id.  In response, Clark asserts that, under this Circuit's precedents, she may recover from Much Shelist because she was an "intended beneficiary" of the firm's

services. Pl.'s Opp'n to Much Shelist Mot. at 5.

Under District of Columbia law,[4] "with rare exceptions, a legal malpractice claim against an attorney. . . [requires] the existence of an attorney-client relationship." Taylor v. Akin, Gump, Strauss, Hauer & Feld, 859 A.2d 142, 147 (D.C. 2004). The primary exception to the requirement of an attorney-client relationship occurs in a narrow class of cases where the "intended beneficiary" of a will sues the attorney who drafted that will. See, e.g., Teasdale v. Allen, 520 A.2d 295, 296 (D.C. 1987); Needham v. Hamilton, 459 A.2d 1060, 1062 (D.C. 1983). The few cases that apply the intended beneficiary exception in other contexts require that third-parties allege more than "mere harm" from the conduct in question, but rather that they were the "direct and intended beneficiar[ies] of the attorney-client relationship." See, e.g., Williams v. Mordkofsy, 901 F.2d 158, 163-64 (D.C. Cir. 1990) (stating that a legal malpractice claim could stand if the parties "reached an understanding" that the third-party was an intended beneficiary of the conduct in question). Hence, "[t]he mere fact that the third-party was a foreseeable plaintiff"

---

[4] The parties assume that District of Columbia law governs the professional malpractice claims. See Pl.'s Opp'n to PAF Mot. at 6; Much Shelist Mot. at 8 n.2. This assumption is consistent with the District of Columbia's choice of law rules, which establish that choice of law turns on which jurisdiction has "the most significant relationship to the dispute" and "which jurisdiction's policy would be more advanced" by applying its law. USA Waste of Maryland, Inc. v. Love, 954 A.2d 1027, 1030-31 (D.C. 2008). To identify the jurisdiction with the most significant relationship to the dispute, D.C. courts must consider four factors: "a) the place where the injury occurred; b) the place where the conduct causing the injury occurred; c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and d) the place where the relationship is centered." Id. at 1030 n.5. The jurisdiction with the most significant relationship to the dispute is "presumptively . . . the jurisdiction whose policy would be more advanced by application of its law." Id. at 1031 n.6. Although Much Shelist and PAF are based in Illinois, Third-Party Compl. ¶¶ 8-9, only one of these four factors ("the place where the conduct causing the injury occurred") even arguably supports applying Illinois law, as opposed to District of Columbia law, in this case. Therefore, the application of District of Columbia law is appropriate.

is not sufficient to give rise to a duty.  Morowitz v. Marvel, 423 A.2d 196, 199 (D.C. 1980).

Although Clark contends that the Court must take as true her allegation that she was the "intended beneficiary" of Much Shelist's services, Pl.'s Opp'n to Much Shelist Mot. at 5, "mere conclusions . . . are not entitled to the assumption of truth" at the motion to dismiss stage.  Iqbal, 129 S. Ct. at 1940.  Clark has not alleged facts sufficient to show that she was the direct and intended beneficiary of Much Shelist's services.  Instead, her allegations demonstrate only that she was a participant in the retirement plan for which Much Shelist provided legal services.  See Third-Party Compl. ¶¶ 4, 8.  Feder Semo was Much Shelist's client and Much Shelist's services were rendered for Feder Semo's benefit.  See id. ¶ 8.  Any benefit that Clark received from these services was collateral to the primary relationship between Feder Semo and Much Shelist.  Because Clark has not alleged facts sufficient to establish that she was the direct and intended beneficiary of Much Shelist's services and there was no attorney-client relationship between Much Shelist and Clark, the legal malpractice claims against Much Shelist in Counts I through III of the third-party complaint will be dismissed.

### B.    Professional Malpractice Claims Against PAF

PAF contends that the professional malpractice claims against it should be dismissed because Clark did not plead enough facts to make out these types of claims -- she asserts only that PAF's advice to the retirement plan was "wrong."[5]  PAF Mot. at 5.  In response, Clark asserts that under the liberal pleading standards of the Federal Rules she has sufficiently pled professional malpractice claims by putting PAF on notice of the nature of such claims.  Pl.'s

---

[5] PAF also argues that Clark's professional malpractice claims are time-barred and that these claims are preempted by ERISA.  PAF Mot. at 5-6.  Because these claims will be dismissed on other grounds, the Court need not address these arguments.

Opp'n to PAF Mot. at 3.

Before turning to the sufficiency of Clark's pleading, it is worth considering whether Clark -- who was an employee of PAF's direct client, Feder Semo -- even has the ability to raise professional malpractice claims. The District of Columbia has not articulated a clear rule with respect to the permissibility of professional malpractice claims brought by third-parties. However, most courts that have considered this issue have held that a party must be in privity of contract with a professional or that a party must be the direct and intended beneficiary of a professional's services to sue for professional malpractice. See, e.g., Tricontinental Indus., Ltd. v. Pricewaterhousecoopers, LLP, 475 F.3d 824, 835 (7th Cir. 2007) ("[T]o be sufficient plaintiff's complaint must allege facts showing that the purpose and intent of the accountant-client relationship was to benefit or influence the third-party plaintiff.") (emphasis in original); Red Rose Motors, Inc. v. Boyer & Ritter, 66 Pa. D. & C.4th 73, 79 (Pa. Commw. Ct. 2004) ("Absent contractual relations between a plaintiff and defendant-accountant, an action founded on a claim for professional negligence will not lie."); Dill v. Wood Shovel & Tool Co., No. 4110, 1972 WL 795, at *5 (S.D. Ohio April 20, 1972) ("In cases involving other professionals . . . the rule is that the professional in the absence of fraud is not liable for ordinary negligence to a third person with whom he has no professional contractual relationship. . . . [T]his rule is equally applicable to the liability of an actuary for alleged negligence in failing to advise its employer as to the correct amount of contributions required to make a pension fund actuarially sound."). Clark has not alleged that she was in privity of contract with PAF, nor has she alleged facts that would demonstrate she was the direct and intended beneficiary of PAF's services. Instead, PAF's actuarial services -- like Much Shelist's legal services -- were procured by Feder Semo to assist it

with the retirement plan and Clark was merely a plan participant. See Third-Party Compl. ¶¶ 4, 9. Accordingly, Clark cannot sue PAF for professional malpractice.

But even if Clark could sue PAF for professional malpractice on a third-party basis, she has not alleged sufficient facts to go forward with her claims. Under District of Columbia law, a plaintiff asserting professional malpractice claims must establish "the applicable standard of care, demonstrate . . . that this standard has been violated, and develop . . . a causal relationship between the violation and the harm complained of." Morrison v. MacNamara, 407 A.2d 555, 560 (D.C. 1979). At the motion to dismiss stage, "the test of sufficiency of the [malpractice] claim is whether the allegations, if proven, would state an actionable dispute." Perez v. Goldin, 360 F. Supp. 2d 12, 16 (D.D.C. 2003). Primarily, Clark has pled that PAF gave the retirement plan "wrong" advice on a number of occasions. Third-Party Compl. ¶¶ 22, 27, 32. Clark also contends that PAF made unreasonable actuarial assumptions when advising the retirement plan, which PAF represented were in fact reasonable. Id. ¶¶ 38-40, 44, 46. Even assuming that PAF's advice was "wrong" and "unreasonable," these allegations do not "plausibly give rise to an entitlement for relief" on a professional negligence claim. Iqbal, 129 S. Ct. at 1941. Liability for "wrong" advice amounts to a strict liability standard, not negligence. See Armada de la Republica Argentina v. Yorkington, No. 92-0285, 1995 WL 46394, at *11-12 (D.D.C. Jan. 27, 1995) ("[T]he imposition of strict liability upon one who merely renders professional advice [is] unwarranted . . . ."). For this reason, as well as the lack of privity of contract or status as the intended third-party beneficiary, the professional malpractice claims against PAF in Counts I through III of the third-party complaint will be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court will grant Much Shelist's and PAF's motions to dismiss and it will dismiss all counts of the third-party complaint. Much Shelist and PAF will be dismissed as parties to this action. A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated:  July 16, 2009