UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DENISE M. CLARK,**<br><br>**Plaintiff,**<br><br>v.<br><br>**FEDER, SEMO & BARD, P.C., et al.,**<br><br>**Defendants.** | Civil Action No. 07-0470 (JDB) |

### MEMORANDUM OPINION

Denise Clark seeks reconsideration of the Court's March 22, 2010 Memorandum Opinion and Order granting in part and denying in part summary judgment to the defendants in this action -- the law firm Feder, Semo & Bard ("Feder Semo"), the Feder Semo Retirement Plan and Trust ("Retirement Plan" or "Plan"), and two former trustees of the Retirement Plan, Joseph Semo and Howard Bard. See Pl.'s Mem. in Supp. of Mot. for Reconsideration ("Pl.'s Mem.") [Docket Entry 77]; see also Clark v. Feder, Semo & Bard, P.C., 697 F. Supp. 2d 24 (D.D.C. 2010). The parties, and the Court, are by now quite familiar with the facts animating this action. See Clark, 697 F. Supp. 2d at 26-29.

Although there is no Federal Rule of Civil Procedure that expressly addresses motions for reconsideration, see Lance v. United Mine Workers of Am. 1974 Pension Trust, 400 F. Supp. 2d 29, 31 (D.D.C. 2005), because the Court's opinion did not fully adjudicate all of Clark's claims, Clark's motion is properly characterized as a motion pursuant to Rule 54(b), see Fed. R. Civ. P. 54(b) (where court resolves "fewer than all the claims," it may revise "its opinion at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and

liabilities"). "The Court has broad discretion to hear a motion for reconsideration brought under Rule 54(b)," Isse v. Am. Univ., 544 F. Supp. 2d 25, 29 (D.D.C. 2008), and reconsideration is appropriate "as justice requires," Cobell v. Norton, 355 F. Supp. 2d 531, 540 (D.D.C. 2005). "Considerations a court may take into account under the 'as justice requires' standard include whether the court 'patently' misunderstood the parties, made a decision beyond the adversarial issues presented, made an error in failing to consider controlling decisions or data, or whether a controlling or significant change in the law has occurred." Williams v. Johanns, 555 F. Supp. 2d 162, 164 (D.D.C. 2008). Review under Rule 54(b) "amounts to determining, within the Court's discretion, whether reconsideration is necessary under the relevant circumstances." Cobell, 355 F. Supp. 2d at 540.

Clark asserted five theories of recovery in this action. She argued that: (1) the defendants improperly grouped her for purposes of determining what percentage of her yearly compensation would be credited to her retirement account, see Clark, 697 F. Supp. 2d at 29; (2) the defendants violated ERISA's anti-cutback rule, 29 U.S.C. § 1054(g), see id.; (3) the Retirement Plan's summary plan description did not disclose information required by federal regulations, see Pl.'s Mem. at 22; (4) the Retirement Plan's fiduciaries failed to "use reasonable actuarial assumptions for interest and the expected retirement age in funding the plan," Clark, 697 F. Supp. 2d at 29 (internal quotation marks omitted); and (5) the fiduciaries failed "to comply with the termination restrictions in Treas. Reg. 1.401(a)(4)-5 which would have preserved over $700,000 for distribution to participants." Id.

The Court granted summary judgment to defendants on four of Clark's five claims. As to Clark's claim that defendants improperly grouped her, the Court concluded that she had the better

of the argument, but found that granting summary judgment in favor of Clark was inappropriate based on the current record. See id. at 33. Clark now asks the Court to revisit all of its rulings.

The Court is persuaded that reconsideration is appropriate on her anti-cutback rule claim, her summary plan description disclosure claim, her interest rate assumption claim, and her termination restriction claim. It will therefore vacate the portions of its March 22, 2010 Memorandum Opinion and Order granting summary judgment to the defendants on those claims. The Court notes, however, that much of the confusion regarding Clark's claims stems from her imprecise and inconsistent framing of those claims. See Clark v. Feder Semo & Bard, P.C., 560 F. Supp. 1, 3 (D.D.C. 2008) (discussing evolution of Clark's claims); Clark v. Feder Semo & Bard, P.C., 527 F. Supp. 2d 112, 114-15 (D.D.C. 2007) (same). Accordingly, in order to ensure that the Court fairly addresses Clark's claims, it will require her to file a statement, consistent with the Court's rulings, precisely detailing the nature of her remaining claims, the statutory basis for each claim (i.e., 29 U.S.C. § 1132(a)(1)(B) or 29 U.S.C. § 1132(a)(2)), the defendants against whom she is asserting each claim, and the relief to which she believes she is entitled on each claim.

## ANALYSIS

### I. Improper Grouping Claim

Clark first contends that the Court erred in its analysis of her claim that the defendants improperly grouped her for purposes of determining what percentage of her yearly compensation would be credited to her retirement account. Specifically, she disagrees with the Court's threshold conclusion that "this claim 'cannot proceed under [29 U.S.C. § 1132(a)(2)], and can

only be proceed [sic] under [29 U.S.C. § 1132(a)(1)(B)]." Pl.'s Mem. at 6.[1]

Clark presented her "improper grouping theory as part of her derivative breach of fiduciary duty claim pursuant to 29 U.S.C. § 1132(a)(2)." Clark, 697 F. Supp. 2d at 30. The Court concluded that section 1132(a)(2) did not supply the cause of action for that claim: "A claim brought under section 1132(a)(2) provides relief only for the plan itself and not for individual beneficiaries." Id. (citing Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985)). "Clark's improper grouping theory," on the other hand, "does not allege an injury to the Retirement Plan as a whole -- it alleges only an injury to her." Id. at 30-31; see also id. at 31 ("Were she to prevail on her claim, any recovery would necessarily go to her, and to her alone."). Hence, because Russell bars plaintiffs from suing under section 1132(a)(2) where they seek damages on their own behalf, the Court concluded that Clark's improper grouping claim "must proceed as a claim for individual benefits under section 1132(a)(1)(B)." Id.

Clark now suggests that "[l]imiting Plaintiff's claim to [section 1132(a)(1)(B)] is inconsistent with the Supreme Court's decision in LaRue v. DeWolff, Boberg & Assocs., 552 U.S. 248 (2008)." Pl.'s Mem. at 6. According to her, "LaRue confirms that a participant has standing to sue for breach of fiduciary duty under [section 1132(a)(2)], even if the breach of duty does not affect everyone in the plan." Id.

Clark reads LaRue too broadly. LaRue held that for defined contribution plans, a plaintiff

---

[1] How the Court classifies Clark's improper grouping claim determines the standard of review for that claim. A court reviews a section 1132(a)(1)(B) claim for individual benefits under a deferential standard of review. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). But it reviews a section 1132(a)(2) claim under an objective standard in which the fiduciaries "are to be judged 'according to the standards of others acting in a like capacity and familiar with such matters.'" Katsaros v. Cody, 744 F.2d 270, 280 (2d Cir. 1984) (quoting Marshall v. Glass/Metal Ass'n, 507 F. Supp. 378, 384 (D. Haw. 1980)).

may bring a breach of fiduciary duty claim under section 1132(a)(2) even where the alleged misconduct only affects "persons tied to particular individual accounts." LaRue, 552 U.S. at 255. But LaRue's holding does not apply to defined benefit plans, the type of plan at issue here, and in Russell, on which this Court relied. See id. at 256 ("[Section 1132(a)(2) does not provide a remedy for individual injuries distinct from plan injuries."); accord Fisher v. Penn Traffic Co., 319 Fed. Appx. 34, 35 (2d Cir. 2009); Estate of Contos ex rel. Menard v. Anheuser-Busch Cos., Inc., Civ. A. No. 4:09-998, 2009 WL 3172718, at *3 (E.D. Mo. Sept. 25, 2009); Cook v. Campbell, Civ. A. No. 2:01-1425, 2008 WL 2039501, at *4 (M.D. Ala. May 12, 2008); see also Rogers v. Baxter Int'l, Inc., 521 F.3d 702, 705 (7th Cir. 2008) ("All we hold today is that participants in defined-contribution plans may use [section 1132(a)(2)] . . . to obtain relief if losses to an account are attributable to a pension plan fiduciary's breach of a duty owed to the plan.").[2] Hence, the Court properly concluded that Clark can bring her improper grouping claim only pursuant to section 1132(a)(1)(B).[3]

Because Clark may proceed on her improper grouping claim only under section 1132(a)(1)(B), the Court correctly found that it had to evaluate that claim under a deferential standard of review. See Clark, 697 F. Supp. 2d at 31 (citing Firestone, 489 U.S. at 115). Such

---

[2] Nor does In re Schering Plough Corp. ERISA Litig., 589 F.3d 585 (2d Cir. 2009), aid Clark, for the case simply does not consider the question whether a beneficiary of a defined benefit plan may bring a breach of fiduciary duty claim under section 1132(a)(2) for individual losses. There, the court agreed that the plaintiff had framed her causes of action in terms of injuries to the ERISA plan as a whole. See In re Schering Plough Corp. ERISA Litig., 589 F.3d at 594.

[3] Clark's suggestion that one of the defendants to this action -- Howard Bard -- may also have an improper grouping claim does not alter this conclusion. Any improper grouping claim still alleges an injury to individuals, not an injury to the Retirement Plan as a whole. See Clark, 697 F. Supp. 2d at 30-31 & n.2.

review required the Court to assess whether the administrative record evidenced a "reasonable decision" by the Retirement Plan's administrator in classifying Clark for purposes of determining what percentage of her yearly compensation would be credited to her retirement account. Id. at 32. The Court found that the administrative record did not do so. See id. at 33. Accordingly, the Court observed that Clark, rather than Feder Semo and the Plan, had the better of the improper grouping argument. See id. Nevertheless, the Court declined to grant summary judgment to Clark without giving defendants another opportunity to point to evidence in the administrative record justifying the Plan administrator's decision. See id. at 32-33.

In their opposition to Clark's motion to dismiss, however, defendants argue for the first time that the Court should have dismissed Clark's improper grouping claim because "the Court cannot provide any relief to Plaintiff under [section 1132(a)(1)(B)] in this action." Defs.' Sur-Reply in Opp'n to Pl.'s Mot. for Reconsideration [Docket Entry 83], at 2. Framing their argument in terms of subject matter jurisdiction, they submit that the improper grouping claim is non-justiciable either because it is moot or because Clark lacks standing to bring that claim. See id. at 3; see also Defs.' Opp'n to Pl.'s Mot. for Reconsideration ("Defs.' Opp'n") [Docket Entry 79], at 8 ("[T]he Plan in this case has terminated and therefore lacks any assets to pay Plaintiff."). But defendants offer no support for either of these arguments.

A claim becomes moot only where "there is no reasonable expectation that the alleged violation will recur, and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." L.A. County v. Davis, 440 U.S. 625, 631 (1979) (internal citations and quotation marks omitted). Here, however, Clark has not gotten benefits to which she contends she is entitled. Nothing, then, "has eradicated the effects of the alleged violation."

Cf. Becker v. Weisberg Group, 473 F. Supp. 2d 48, 67 (D.D.C. 2007) ("Where, as here, a beneficiary [to a defined benefit plan] has received her pension plan benefits, that beneficiary no longer has any personal stake in the outcome of the litigation.").

Nor have the defendants demonstrated that because the Plan's assets have been dissipated due to the plan's termination, Clark does not have standing to sue that plan. This theory improperly conflates standing with a plaintiff's ability to recover damages from a defendant.[4] See Int'l Ladies' Garment Workers' Union v. Donovan, 722 F.2d 795, 811 (D.C. Cir. 1983) ("The appellants need not negate every conceivable impediment to effective relief no matter how speculative, nor are they required to prove that granting the requested relief is certain to alleviate their injury." (citations and internal quotation marks omitted)); cf. Foretich v. United States, 351 F.3d 1198, 1215 (D.C. Cir. 2003) ("In other areas of the law, courts have proceeded on the assumption that a favorable judicial decision will provide meaningful relief -- even if not complete -- to a party who alleges an injury to his or her reputation."). Hence, the Court confirms that Clark may proceed on her section 1132(a)(1)(B) claim based on her theory that Feder Semo improperly grouped her for purposes of her retirement account credit.[5]

---

[4] Defendants are correct, however, that Clark cannot proceed on her improper grouping claim against Feder Semo (although it is unclear whether she even asserts this claim against the firm). There is a split of authority as to whether a plaintiff may sue the plan administrator -- here, Feder Semo -- on a section 1132(a)(1)(B) claim. See Hall v. LHACO, Inc., 140 F.3d 1190, 1194 (8th Cir. 1998) (discussing cases). But even if a plaintiff may proceed against the plan administrator in this jurisdiction, that relief is unavailable to Clark here. A plaintiff only has standing to proceed against a plan administrator where that administrator provides services to a plan. See id. at 1196. Feder Semo, however, no longer administers the Retirement Plan, and therefore is not a proper defendant. See id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

[5] Clark submits that if she cannot obtain relief under section 1132(a)(1)(B), she should be allowed to proceed under section 1132(a)(3). See Pl.'s Reply in Supp. of Mot. for

**II.     Anti-Cutback Rule Claim**

Clark next contends that the Court erred in granting summary judgment to the defendants on her anti-cutback rule claim. According to Clark, the Retirement Plan offered participants the option of taking their benefits as a straight life annuity or as "a lump sum distribution equal to 100% of the present value of the annuity benefit." Pl.'s Opp'n to Defs.' Mot. for Summ. J. [Docket Entry 58], at 36. But, Clark submitted, after Feder Semo terminated the Plan in 2005, a participant could no longer elect a lump sum payment equal to the full present value of her annuity benefit. See id. Instead, a participant's lump sum payment option was worth only 53% of the present value of the annuity. See id. In her view, by reducing the value of a participant's lump sum payment, Feder Semo violated ERISA's anti-cutback rule.

The Court rejected this claim. See Clark, 697 F. Supp. 2d at 33-34. It noted that ERISA's anti-cutback rule provides that "the accrued benefit of a participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. § 1054(g)(1). And the Court found that "a lump sum benefit is an optional form of benefit." Steiner Corp. Ret. Plan v. Johnson & Higgins of Cal., 31 F.3d 935, 939 (10th Cir. 1994); see also Wetzler v. Ill. CPA Soc. & Found. Ret. Income Plan, 586 F.3d 1053, 1059 (7th Cir. 2009) ("A plan participant's ability to take a lump-sum distribution of benefits is an 'optional form of benefit' as defined by the anti-cutback

---

Reconsideration ("Pl.'s Reply") [Docket Entry 80], at 10. The Court need not reach this question now, however, as Clark may go forward on her section 1132(a)(1)(B) claim. Even so, the Court notes that relief under section 1132(a)(3) is limited to "appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B). And the Court previously observed that "[s]ince the equitable relief requested by plaintiff is essentially a claim for benefits expressed in equitable language, plaintiff has not sought appropriate equitable relief under [section 1132(a)(3)]." Clark v. Feder Semo & Bard, P.C., 527 F. Supp. 2d 112, 117 n.1 (internal quotation marks omitted). Hence, if Clark later seeks to proceed under section 1132(a)(3), she will have to demonstrate that the relief she seeks is "appropriately framed in equity." See Clark, 527 F. Supp. 2d at 117 n.1.

provision of ERISA."). Therefore, the Court concluded that a lump sum payment -- the benefit at issue in Clark's anti-cutback allegation -- "is not an accrued benefit as that term is defined in 29 U.S.C. § 1002(23)." Id. Under the plain language of the anti-cutback rule, optional forms of benefit are protected only to the extent that a plan amendment eliminates that benefit. See 29 U.S.C. § 1054(g)(2)(B) (a plan amendment "eliminating an optional form of benefit . . . [is] treated as" violating the anti-cutback rule). Because Clark did not -- and could not -- "contend that the Retirement Plan's termination eliminated her right to take a lump sum distribution," the Court granted summary judgment to the defendants on Clark's anti-cutback rule claim. Clark, 697 F. Supp. 2d at 34-35.

Clark now argues that the Court improperly defined an "accrued benefit" to exclude lump sum payments. See Pl.'s Mem. at 10-11.[6] An accrued benefit is "the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age [i.e., an annuity]." 29 U.S.C. § 1002(23)(A). And section 1054(c)(3) states that "if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age, . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit." 29 U.S.C. § 1054(c)(3). Based on these definitions, Clark asserts that when a plan participant chooses to obtain her retirement benefits in a lump sum payment, that payment is nonetheless an accrued

---

[6] Although Clark contends that the Court did not put her on notice of its proposed legal interpretation of ERISA's anti-cutback rule, see Pl.'s Mem. at 10, this concern is without merit. Clark herself put the interpretation of 29 U.S.C. § 1154(g) before the Court by bringing a claim based on it, and she failed to support her interpretation of the anti-cutback rule with any of the arguments she now deploys. The Court has no obligation to preview the interpretation of a statute with the parties.

benefit within the meaning of ERISA. See Pl.'s Mem. at 12.[7]

Based on Clark's new arguments, the Court is now persuaded. In Edsen v. Bank of Boston, 229 F.3d 154 (2d Cir. 2000), the Second Circuit considered the relationship between section 1002(23) and section 1054(c)(3), and found that the definition of accrued benefit could include a lump sum payment:

> What these provisions mean in less technical language is that[] (1) the accrued benefit under a defined benefit plan must be valued in terms of the annuity that it will yield at normal retirement age; and (2) if the benefit is paid at any other time (e.g., on termination rather than retirement) or in any other form (e.g., a lump sum distribution, instead of annuity) it must be worth at least as much as that annuity.

Edsen, 229 F.3d at 163. Other courts have reached the same conclusion. See United States v. Novak, 476 F.3d 1041, 1061 (9th Cir. 2007) (en banc) ("[T]he accrued benefit is a right to the annual payments promised by the terms of the plan or, if the plan provides the option of receiving a lump sum payment in lieu of those annual payments, to their actuarial equivalent."); Call v. Ameritech Mgmt. Pension Plan, 475 F.3d 816, 817 (7th Cir. 2007) ("When a participant in a defined-benefit pension plan is given a choice between taking pension benefits as an annuity or in a lump sum, the lump sum must be so calculated as to be the actuarial equivalent of the annuity."); Costantino v. TRW, Inc., 773 F. Supp. 34, 41 (N.D. Ohio 1991) ("'[A]ccrued benefit' can best be defined as the actuarial equivalent of the annual benefit commencing at normal

---

[7] A plan beneficiary's ability to select her benefits as a lump sum payment, or as some other form of distribution, "is an 'optional form of benefit' as defined by the anti-cutback provision of ERISA." Wetzler, 586 F.3d at 1059. And it is that choice that the anti-cutback rule also protects from elimination. See 29 U.S.C. § 1054(g)(2)(B). In other words, the anti-cutback rule protects a plan beneficiary's accrued benefits -- which includes a lump sum payment -- from reduction or elimination. See id. § 1054(g)(1). The rule also protects from elimination a plan beneficiary's ability to choose the form in which she may obtain those benefits. See id. § 1054(g)(2)(B).

retirement age."), aff'd in part, 13 F.3d 969 (6th Cir. 1994).

In light of these cases, the Court concludes that the term "accrued benefit" as used in the anti-cutback rule encompasses a lump sum payment when a plan participant chooses to receive her benefits in that form. Steiner, the case on which the Court principally relied, simply failed to consider the effect of section 1054(c)(3) on the definition of "accrued benefit." As a result, its conclusion that a lump sum payment "is not an accrued benefit as that term is defined in 29 U.S.C. § 1002(23)," Steiner, 31 F.3d at 939, is inconsistent with ERISA. Accordingly, the Court will vacate the section of its March 22, 2010 Memorandum Opinion and Order granting summary judgment to the defendants on Clark's anti-cutback rule claim. Clark now may proceed on that claim.

### III. Summary Plan Description Claim

Clark alleged that defendants failed to disclose information required by federal regulations in the Retirement Plan's summary plan description. See Clark, 697 F. Supp. 2d at 35 n.11. Neither her complaint nor her opposition to defendant's motion for summary judgment, however, made entirely clear the legal basis for her allegations, or the injury she suffered as a result. Therefore, at the motions hearing, the Court explored the legal basis for this claim with Clark's counsel:

> The Court: On the disclosure, I don't see any monetary -- I mean, you describe that as just sort of indicating the problems here, but I don't see any independent monetary recovery based on that claim. Is there?
>
> Counsel: It's really the same as the [section 1054(g) anti-cutback claim], Your Honor.

Feb. 22, 2010 Mot. Hr'g Tr. 68:6-11. Based on this colloquy, the Court understood Clark to be

arguing that her disclosure claim merely repeated her anti-cutback claim. As a result, the Court dismissed her disclosure claim on the grounds that "this allegation was not an independent basis of recovery, but instead supported her anti-cutback theory." Clark, 697 F. Supp. 2d at 35 n.11.

Clark now submits that the Court misinterpreted the colloquy. According to Clark, her counsel did not intend to state that the disclosure claim "was 'not an independent basis' for recovery." Pl.'s Mem. at 19. Rather, she was demonstrating that her disclosure claim "provides an alternative basis for recovering the full value of the accrued benefit." Id. The Court will consider Clark's disclosure claim in light of her belated clarification.

Even as Clark has clarified the independence of her disclosure claim, however, her motion for reconsideration reveals that its scope remains opaque. To be sure, part of her claim is clear. She alleges that the Retirement Plan's summary plan description fails to disclose two pieces of information required by the Department of Labor's ERISA's regulations: (1) a statement of whether the plan is insured by the Pension Benefit Guaranty Corporation ("PBGC"), and, if it is not, the reasons for the lack of insurance, see 29 C.F.R. § 2520.102-3(m); and (2) a statement "clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, forfeiture, suspension, offset, reduction, or recovery . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits," id. § 2520.102-3(l).

Yet Clark suggests in her motion for reconsideration that there are additional aspects to her disclosure claim. For example, she offers that the terms of the summary plan description conflict with the terms of the Retirement Plan itself, thereby providing another basis for relief.

See Pl.'s Mem. at 21.  But Clark does not specifically identify the conflict.[8]  Despite this imprecision, the Court will revive Clark's disclosure claim -- the statement the Court will require Clark to file will, it is hoped, remedy any remaining confusion regarding the particulars of her disclosure claim.

**IV.     Derivative Breach of Fiduciary Duty Claims**

Lastly, Clark challenges the dismissal of her two derivative breach of fiduciary duty allegations: that the Retirement Plan's fiduciaries (1) used improper actuarial and interest rate assumptions to fund the plan, and (2) violated various regulations by permitting two distributions to Plan participants.  See Clark, 697 F. Supp. 2d at 35.  The Court takes each in turn.

     A.     Actuarial and Interest Rate Assumptions

According to Clark, the Plan's fiduciaries funded the Plan based on the assumption that most participants would take their benefits at normal retirement age.  See id.  "This was in error, she suggests, because only two individuals took their retirement benefits at retirement age, while other participants took their benefits as a lump sum payment significantly before retirement age."  Id. at 35-36.  The Court dismissed this theory, concluding that Clark had not provided evidence demonstrating that any of the Plan's beneficiaries took their retirement benefits before the age of sixty-five prior to the Plan's termination.  See id. at 36.

In her motion for reconsideration, Clark attempts to supply this missing evidence by pointing to the fact that she planned to take her retirement benefits before normal retirement age. See Pl.'s Mem. at 30.  And she again deploys her expert's unsupported conclusion that "the Plan's

---

[8] Moreover, she has not identified what remedy is available where a summary plan description fails to include information required by 29 C.F.R. § 2520.102-3.

experience in the entire period before it was terminated" was that beneficiaries planned to take a lump sum distribution. Id. This is insufficient. Neither the intent of a single individual, nor an expert's unsupported conclusions, serve to create a genuine issue of material fact here as to whether the fiduciaries used an incorrect actuarial assumption, or whether another fiduciary "acting in a like capacity and familiar with such matters" would have adopted the same approach, Katsaros v. Cody, 744 F.2d 270, 280 (2d Cir. 1984); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (summary judgment appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]"). The Court, therefore, confirms its decision on Clark's actuarial assumption argument.

Clark also argued that the fiduciaries funded the Retirement Plan based on an improper interest rate assumption. See Clark, 697 F. Supp. 2d at 36. The Plan's fiduciaries employed a projection about what the market interest rate would be. See id. This prediction mattered because to the extent the market interest rate decreases relative to the Plan's projected interest rate, the present cash value of a beneficiary's annuity increases. See Hirt v. Equitable Retirement Plan for Emps., Managers, and Agents, 533 F.3d 102, 109 (2d Cir. 2008). And if the present value of a beneficiary's annuity increases, but the Plan's funding remains constant, there is a potential for the Plan to have unfunded liabilities.

Here, Clark asserted that "interest rates dropped after 9/30/2001," but the fiduciaries failed to take any corrective action. Pl.'s SJ Opp'n at 22. The Court found, however, that this fact alone presented no genuine issue of material fact as to whether the fiduciaries acted imprudently. And therefore the Court granted summary judgment to the defendants. See Clark, 697 F. Supp. 2d at 37 ("[T]o the extent that statement alleges that the fiduciaries acted

imprudently, it does not demonstrate what decisions they made that were incorrect measured against the objective standard governing fiduciaries.").

In her motion for reconsideration, Clark now focuses the Court on evidence she had not highlighted in her summary judgment briefing. That evidence -- the Retirement Plan's Internal Revenue Service Form 5500s for the years 2001 through 2004 – demonstrates that the Plan was funded at 95.7% of liabilities in fiscal year 2001, 55.8% of liabilities in fiscal year 2002, 49.2% of liabilities in fiscal year 2003, and 60.8% of liabilities in fiscal year 2004. See Pl.'s SJ Opp'n, Pl.'s Statement of Undisputed Material Facts ("Pl.'s SOF"), Ex. 101 (Expert Report of Claude Poulin ("Poulin Report"), Ex. C (2001-04 Form 5500s). In other words, then, this evidence shows that the Plan was underfunded during fiscal years 2001 through 2004.[9]

Moreover, Clark previously demonstrated that the Plan's fiduciaries used an interest rate assumption approximately 2.5% above the market rate. See Poulin Report at ¶ 13 (market rate was 5.38%); Pl.'s SOF, Ex. 139 (Deposition of William Anspach), 184:20-185:2 (interest rate assumption raised to 8% after September 30, 2001). As a result of this divergence between predicted interest rate and market interest rate after September 2001, the present cash value of the Plan beneficiaries' annuities was greater than predicted by the Plan. The fiduciaries therefore had before them evidence demonstrating that (a) their interest rate assumption did not reflect market realities, and (b) the Plan was significantly underfunded. The Court is persuaded, based on these newly-developed facts, that there is a genuine issue of material fact as to whether a different fiduciary "acting in a like capacity and familiar with such matters," Katsaros, 744 F.2d at 280

---

[9] The defendants have not submitted evidence detailing, nor have they explained, the baseline to be used to measure the Plan's underfunding.

(internal quotation marks omitted), would have adopted the same interest rate assumption in the years before the Plan's termination. Hence, summary judgment for defendants must be denied, and the Court will permit Clark to go forward on her interest rate assumption theory.

B.      Violation of 26 C.F.R. § 1.401(a)(4)-5

Clark also contends that the Court erred in rejecting her allegation that a distribution by the Plan's fiduciaries to Loretta Feder in December 2002 violated 26 C.F.R.§ 1.401(a)(4)-5, and that a distribution by the Plan's fiduciaries to Gerald Feder in November 2005 violated Revenue Ruling 92-76.

Section 1.401(a)(4)-5(b) restricts the lump sum payments available to highly compensated employees unless "[a]fter taking into account payment to . . . the restricted employee of all benefits payable to . . . that restricted employee under the plan, the value of plan assets . . . equal[s] or exceed[s] 110 percent of the value of current liabilities." 26 C.F.R. § 1.401(a)(4)-5(b)(3)(iv)(A). With respect to Loretta Feder's distribution, Clark asserted that it "left the Plan's funding even farther short of 110% of the current liabilities in the plan year ending September 30, 2003." Pl.'s SJ Opp'n at 29. The Court concluded, however -- based on exhibits Clark herself submitted -- that "there remained funds exceeding 110% of liabilities after the December 2002 distribution to Loretta Feder," and therefore that the "distribution did not support Clark's breach of fiduciary duty claim." Clark, 697 F. Supp. 2d at 38. Specifically, the Plan's outside actuary calculated that the $381,901.00 distribution to Loretta Feder was permissible because "the Plan's assets before the payment to Loretta Feder equaled $1,205,792.86, and . . . 110% of the Plan's liabilities [after the payment] equaled $808,669.00." Id.

Clark now argues, based on the Form 5500s to which she now points, that the actuary's calculations were incorrect. According to her, the Retirement Plan's "Form 5500 <u>before</u> the distribution to Mrs. Feder showed liabilities of $1,303,880, and the Plan's Form 5500 <u>after</u> the distribution to Mrs. Feder showed liabilities of $1,111,748." Pl.'s Mem. at 38. These numbers are inconsistent with the actuary's finding that 110% of liabilities before the distribution to Loretta Feder equaled $808,669.00. If the Form 5500s correctly reflect the Plan's liabilities, the distribution to Loretta Feder may have violated 26 C.F.R. §1.401(a)(4)-5(b). At this stage of the litigation, the conflict between the actuary's calculations and the Form 5500s creates a genuine issue of material fact as to whether the Retirement Plan had sufficient assets to permit the December 2002 distribution to Loretta Feder. Accordingly, the Court will permit Clark to proceed on her claim that the December 2002 distribution was improper, and her motion for reconsideration will be granted on that issue.

Finally, Clark argued that the November 2005 distribution of $229,949.00 to Gerald Feder violated Revenue Ruling 92-76. In her view, that ruling prohibited the November 2005 distribution because, while Gerald and Loretta Feder "'had already received almost 80% of the value of their benefits,'" the other plan beneficiaries "'were relegated to receivied only 53% of the value of their benefits." <u>Clark</u>, 697 F. Supp. 2d at 38 (quoting Pl.'s SJ Opp'n at 30). The Court concluded that the revenue ruling did not apply to Clark's argument: "[b]y its plain terms, the ruling did not analyze whether a particular individual's distributions in past years affect the permissible amount of that individual's distribution in later years." <u>Id.</u>

It now appears that Clark cited Revenue Ruling 92-76 not to allege a violation of the ruling itself, but rather to demonstrate that the November 2005 distribution violated 26 C.F.R. §

1.401(a)(4)-5(b). See Pl.'s Mem. at 40 ("The [November 2005 distribution to Gerald Feder] is inconsistent with both the terms and the non-discriminatory purpose of the Treasury Department's regulations at 1.401(a)(4)-5 and with Revenue Ruling 92-76."). In light of how Clark framed this claim in her summary judgment briefing, the Court did not previously consider this issue. Given her clarification, however, the Court will vacate the portion of its March 22, 2010 Memorandum Opinion and Order granting summary judgment to the defendants on this claim. Again, Clark must detail the precise contours of this claim in her statement to the Court.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Clark's motion for reconsideration. It will grant the motion as to Clark's anti-cutback claim, her disclosure claim, her claim that the Plan's fiduciaries used incorrect interest rate assumptions, and her claim that the December 2002 distribution to Loretta Feder and the November 2005 distribution to Gerald Feder were a breach of fiduciary duty. The Court will vacate those portions of its March 22, 2010 Memorandum Opinion and Order related to those claims. The Court will deny Clark's motion as to her remaining claims.

The Court will also require Clark to file a statement (consistent with the Court's rulings) precisely detailing her remaining claims, the statutory basis for each claim, the defendants against whom she is asserting each claim, and the relief to which she believes she is entitled on each claim. This statement will permit the Court and the parties to better address Clark's claims as this litigation moves forward. A separate Order accompanies this Memorandum Opinion.

/s/
John D. Bates
United States District Judge

Dated: <u>September 13, 2010</u>