UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENISE M. CLARK,<br><br>    Plaintiff,<br><br>    v.<br><br>FEDER, SEMO & BARD, P.C., et al.,<br><br>    Defendants. | Civil Action No. 07-470 (JDB) |

## MEMORANDUM OPINION

Before the Court is [138] defendants Joseph Semo and Howard Bard's (collectively, "S&B") motion seeking an award of attorney's fees for multiple years of litigation with plaintiff Denise Clark, pursuant to 29 U.S.C. § 1132(g) and 28 U.S.C. § 1927. S&B seek attorney's fees from both Clark and her counsel, Stephen R. Bruce. For the reasons discussed below, the Court will deny S&B's motion.

## BACKGROUND

Clark was an attorney with the law firm of Feder, Semo & Bard, P.C. ("FS&B") for almost ten years until she left the firm in 2002. In 2005, FS&B unexpectedly went out of business, and Clark received accelerated retirement benefits according to FS&B's retirement plan. She alleged that FS&B's plan had insufficient funds to pay out benefits according to the terms of the plan, and in 2007 she brought claims against FS&B, FS&B's retirement plan, and S&B individually, seeking recovery of unpaid retirement benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. The Court dismissed some of Clark's claims but denied defendants' motion to dismiss the remaining claims. Clark v. Feder Semo & Bard, P.C., 527 F. Supp. 2d 112 (D.D.C. 2007). In March 2010, the Court granted

1

summary judgment for defendants on all but one of Clark's claims, Clark v. Feder, Semo & Bard, P.C., 697 F. Supp. 2d 24 (D.D.C. 2010), but shortly afterwards, the Court reconsidered that decision and vacated the partial grant of summary judgment, Clark v. Feder, Semo & Bard, P.C., 736 F. Supp. 2d 222 (D.D.C. 2010). The Court then ordered Clark to file a statement clarifying the nature of her remaining claims, which had evolved over the course of the proceedings. See Order of Sept. 30, 2010 [ECF No. 85]. The case continued, and in September 2011 the Court granted summary judgment for defendants on two of these claims, see Clark v. Feder Semo & Bard, P.C., 808 F. Supp. 2d 219 (D.D.C. 2011), but proceeded to trial on three remaining claims. The Court conducted a six-day bench trial and ultimately entered judgment for the defendants on all remaining claims. Clark v. Feder Semo & Bard, P.C., 895 F. Supp. 2d 7 (D.D.C. 2012). S&B then filed this motion to recover attorney's fees, but before it was fully briefed Clark appealed the judgment on the merits to the D.C. Circuit, which affirmed this Court's judgment. Clark v. Feder Semo & Bard, P.C., 739 F.3d 28 (D.C. Cir. 2014). The motion for fees, which had been stayed pending the outcome of Clark's appeal, is now ripe.

## DISCUSSION

S&B move to collect attorney's fees from Clark, under 29 U.S.C. § 1132(g), and from Clark's counsel, Stephen R. Bruce, under both 29 U.S.C. § 1132(g) and 28 U.S.C. § 1927. The Court will first examine whether S&B are entitled to attorney's fees from Clark, and then turn to the request for attorney's fees from Bruce.

**I.  S&B's Motion For Attorney's Fees From Clark**

ERISA provides that "in any action under this subchapter, . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In Eddy v. Colonial Life Insurance Co. of America, the D.C. Circuit set out five

2

factors "as guidelines for the district court in deciding whether to award attorney's fees under ERISA." 59 F.3d 201, 206 (D.C. Cir. 2003). Those factors are: "(1) the losing party's culpability or bad faith; (2) the losing party's ability to satisfy a fee award; (3) the deterrent effect of such an award; (4) the value of the victory to plan participants and beneficiaries, and the significance of the legal issue involved; and (5) the relative merits of the parties' positions." Id. This Court will examine each of the Eddy factors in turn.[1]

### a) Bad Faith or Culpability

S&B begin by arguing that the first Eddy factor, bad faith or culpability, favors an award of attorney's fees because "Clark acted in bad faith . . . in pursuing several of her claims and unreasonably prolonging the proceedings." Defs.' Mem. Supp. Mot. for Att'y Fees ("Defs.' Mot.") [ECF No. 138-1] at 10. "The first factor . . . is distinct from the fifth factor and focuses not on the relative merits of the parties' legal arguments and factual contentions, but on the nature of the offending party's conduct." Eddy, 59 F.3d at 210. "[A] party moving for attorney's fees . . . must demonstrate 'evidence of intentional or reckless conduct' to support a finding of

---

[1] Normally, it is the employee-plaintiffs who move for attorney's fees after a victory on the merits, instead of employer-defendants as in this motion. On its face, the statute does not indicate that a defendant is less likely than a plaintiff to be awarded attorney's fees. In fact, the statute explicitly states that "either party" may receive an award of attorney's fees. 29 U.S.C. § 1132(g)(1). But as the D.C. Circuit has explained, ERISA's fee provision was designed to "protect the interests of plan participants and their beneficiaries." Eddy, 59 F.3d at 208. Another court in this district has construed that language in Eddy to mean that "consideration of these factors seldom dictate an assessment of attorney's fees against ERISA plaintiffs." See Boland v. Thermal Specialties, Inc., 966 F. Supp. 2d 8, 11 (D.D.C. 2013) (noting that a "bias toward ERISA plaintiffs is necessary to prevent the chilling of suits brought in good faith").

Other circuits have drawn similar conclusions about awarding fees to defendants in ERISA cases. See Gibbs v. Gibbs, 210 F.3d 491, 505 (5th Cir. 2000) ("Clearly, Congress intended the fee provisions of ERISA to encourage beneficiaries to assert their rights without fear of being responsible for the fees and costs of their opponent's attorneys if they failed to prevail."); Rivera v. Benefit Trust Life Ins. Co., 921 F.2d 692, 698 (7th Cir. 1991) ("[T]he five-factor test is oriented toward the case where the plaintiff rather than the defendant prevails and seeks an award of attorney's fees.") (internal quotations omitted); Carpenters S. Cal. Admin. Corp. v. Russell, 726 F.2d 1410, 1417 (9th Cir. 1984) ("Defendant employers may be awarded attorney's fees under 29 U.S.C. § 1132(g)," but "[the] factors frequently suggest that attorney's fees should not be charged against ERISA plaintiffs.").

The Court will address how the movants' status as employer-defendants affects the fee determination factor by factor.

3

bad faith." Boland, 966 F. Supp. 2d at 12 (quoting Eddy, 59 F.3d at 210). That is not to say, however, that the merits of the parties' legal arguments are irrelevant to whether a party acted in bad faith: arguments may be "so devoid of merit as to rise to the level of bad faith." See Holland v. Williams Mountain Coal Co., 496 F.3d 670, 673 (D.C. Cir. 2007).

Actions that courts consider to be taken in bad faith typically reflect a party's intent to confuse or mislead the court. Compare Finks v. Life Ins. Co. of N. Am., No. 08-1272, 2009 WL 2230899, at *4 (D.D.C. 2009) (finding that an insurance company acted in bad faith when it backdated a claim-decision letter to conceal that it missed a mandatory 90-day deadline under ERISA), and Becker v. Weinberg Grp., 554 F. Supp. 2d 9, 16 (D.D.C. 2008) (finding that defendant's disingenuous filings with the court and refusal to pay money owed to the plaintiff constituted bad faith), with Holland, 496 F.3d at 676 (noting that pursuing a losing claim grounded in a reasonable legal argument does not constitute bad faith), and Boland, 966 F. Supp. 2d at 12 (holding that plaintiffs did not act in bad faith in pursuing their claim where defendant could not show that plaintiffs lacked an objectively reasonable belief that they might prevail).

Here, S&B argue that Clark acted in bad faith by pursuing her claims because she allegedly "prolong[ed] the proceedings" and "attempt[ed] to drive up . . . the cost of litigation" by "continually shifting the theories of her claims in an attempt to evade an adverse judgment," and "attempting to add in non-parties to the litigation in an attempt to avoid summary judgment." Defs.' Mot. at 10. To be sure, Clark's claims have been ambiguous, and this Court has, in the past, required her to clarify them. See Clark v. Feder, Semo & Bard, P.C., 736 F. Supp. 2d 222, 234 (D.D.C. 2010); see also Order of Sept. 30, 2010 [ECF No. 85]. Pursuing confusing or unclear claims, however, does not by itself constitute bad faith, and this Court was ultimately satisfied with Clark's efforts to clarify her claims. See Eddy, 59 F.3d at 210. The Court also does

not view Clark's "shifting" theories as evidence of her intent to "prolong the proceedings." Defs.' Mot. at 10. Instead, it reflects a certain level of ineptness. S&B must provide "evidence of intentional or reckless conduct," and the Court is unconvinced that Clark's inexpert litigating rises to the level of "reckless" or bad faith conduct. Eddy, 59 F.3d at 210; see also Finks, 2009 WL 2230899 at *4; Becker, 554 F. Supp. 2d at 16. Although Clark and her counsel may at times have been confused with respect to the legal theories pursued, they did not act with an intent to confuse or mislead the Court.

Similarly, this Court does not view Clark's attempt to join two third parties as evidence of bad faith. It is not clear that Clark attempted to join the non-parties "to avoid summary judgment," as S&B argue. Defs.' Mot. at 11. Rather, it appears that Clark moved to join the third parties in response to a counterclaim by defendants. See Clark v. Feder Semo & Bard, P.C., 634 F. Supp. 2d 99, 102 (D.D.C. 2009). That counterclaim alleged that Clark was a fiduciary of the retirement plan and was responsible for any violation related to benefit distributions. Id. at 103. Clark responded by filing a third-party complaint against Much Shelist Denenberg Ament & Rubenstein, P.C. and the Pension Advisory Fund, two entities that provided legal and actuarial services to the retirement plan. Id. at 102. The third party complaint asserted claims against both entities for violations of ERISA and professional malpractice and sought indemnification from them. Id. at 103. Even though this strategy was not effective, it seems to be a reasonable response to the counterclaim in these circumstances. Thus, S&B have not shown that Clark's aim in attempting to join those parties was "to avoid summary judgment." Defs.' Mot. at 11. Accordingly, the Court concludes that bad faith is not evident from the record, so this factor weighs against an award of attorney's fees.

### b) Ability to Satisfy an Award

The Court must also consider whether Clark is able to satisfy an award of attorney's fees. See Eddy, 59 F.3d at 206. In cases where a court does not have enough information to decide whether the losing party can satisfy the fee, this factor is neutral. See Risteen v. Youth for Understanding, Inc., No. 02-0709, 2003 WL 22011766, at *3 (D.D.C. 2003) (noting that without records detailing the losing party's financial situation, courts are unable to accurately weigh the second factor in favor of either party). S&B argue that Clark is able to pay, yet there is very little evidence in the record to aid the Court in determining whether this is true. S&B provide Clark's prior work history, but this sheds little light on her current financial situation. See Defs.' Mot. at 11. Clark admits that she runs a law practice employing two associates, but she also claims that her income, based mostly on contingent fees, is too inconsistent to allow her to satisfy a fee award while also maintaining her practice and thus her livelihood. See Decl. of Denise M. Clark [ECF No. 148-1]. Without more information, this factor is neutral.

### c) Deterrent Effect of Awarding Attorney's Fees

S&B also argue that the third Eddy factor—the deterrent effect of an award—favors awarding attorney's fees. They contend that an award of attorney's fees here would deter potential plaintiffs "from pursuing claims they know or should know lack merit, . . . from unreasonably prolonging litigation by constantly changing the nature of their claim, and . . . from unreasonably attempting to multiply the proceedings." Defs.' Mot. at 12. The deterrence factor "arises from the statutory purpose to 'protect the interests of the plan participants and their beneficiaries.'" Eddy, 59 F.3d at 207 (quoting 29 U.S.C. § 1001). In identifying this factor, the D.C. Circuit noted that "the district court must consider whether the award of fees will likely deter . . . similar future ERISA violations . . . ." Id. at 207. The focus is thus on deterring ERISA

violations, not, as S&B argue, deterring fruitless claims. "ERISA's remedial purpose" would be threatened if plaintiffs are deterred from bringing suits for fear of bearing their opponent's attorney's fees. Eddy, 59 F.3d at 207. Moreover, other mechanisms exist to deter frivolous litigation. See, e.g., Fed. R. Civ. P. 11. Hence, to prevent a chilling effect, this factor usually weighs against awarding attorney's fees to a defendant, as other courts have concluded. See Gibbs, 210 F.3d at 505 (finding that "the fee provisions of ERISA [were intended] to encourage beneficiaries to assert their rights without fear of being responsible for the fees . . . of their opponent's attorneys."); Carpenters, 726 F.2d at 1416 (noting that consideration of the deterrence factor justifies a fee award for defendants less often than plaintiffs); Boland, 966 F. Supp. 2d at 14 ("To saddle ERISA plaintiffs with the threat of a fee award for nothing more than losing in court would undermine [ERISA's] essential remedial purpose.").

This does not mean, however, that a court can never award attorney's fees to a defendant. That conclusion would contradict the plain language of the statute, which allows "either party" to seek attorney's fees. 29 U.S.C. § 1132(g)(1). But the other Eddy factors must outweigh the potential deterrent effect on plaintiffs pursuing meritorious claims.

### d) Value of the Victory to Plan Participants / Significance of Legal Issue

The fourth Eddy factor is the value of the victory to the plan participants and the significance of the legal issues involved. When weighing this factor, the Court must consider whether the prevailing party "conferred a common benefit by making it less likely that plan participants in [the plaintiff's] predicament will have to litigate their claims and easier for them if they or their beneficiaries do." Eddy, 59 F.3d at 209. S&B argues that this factor is not relevant here, while Clark counters that the proceedings—including a decision from the D.C. Circuit— have clarified the law in this jurisdiction to the benefit of plan participants.

7

S&B are not entirely off-base in arguing that the fourth factor is irrelevant here. Other circuits, and other courts in this district, have noted that this factor is not typically relevant when the defendant is the prevailing party. See Carpenters, 726 F.2d at 1416; see also Marquardt v. N. Am. Car Corp., 652 F.2d 715, 721 (7th Cir. 1981) (stating that "the benefit of the suit to all participants in an ERISA plan . . . is primarily relevant only to whether plaintiffs should be awarded attorney's fees.") (emphasis added); Boland, 966 F. Supp. 2d at 14. Eddy provides little guidance on this point: the prevailing party in that case was the plaintiff. But the relevant inquiry is whether S&B's victory "conferred a common benefit" on future plaintiffs who may seek ERISA claims. Eddy, 59 F.3d at 209. Common benefits include "providing a clear statement of the law," even if plan participants do not directly benefit from the case. Id. A clear statement of the law is one that addresses a generally applicable legal question, rather than a narrow factual issue. See id.; Risteen, 2003 WL 22011766 at *4 (same). A defendant's win, just as much as a plaintiff's win, can result in a clear statement of the law, so it is possible for a defendant's victory to confer a common benefit to future plaintiffs.[2]

Here, the proceedings have addressed generally applicable legal questions: they have clarified previously ambiguous portions of ERISA. See Clark, 739 F.3d at 28 (holding that ERISA did not displace a common-law principle that permits fiduciaries to rely on the advice of counsel); see also Risteen, 2003 WL 22011766 at *4 (noting that victory conferred a common

---

[2] Clark argues that this factor is relevant, but only to the extent that it will always weigh in favor of the plaintiff. Clark largely reiterates her points from her discussion of the deterrence factor, arguing that "permitting fees would 'deter such suits and make it less likely . . . that ERISA's goals will be served.'" Pl.'s Opp'n to Defs.' Mot. to Dismiss [ECF No. 148] ("Pl.'s Opp'n") at 19 (quoting Boland, 966 F. Supp. 2d at 15). But unlike the deterrence factor, this factor may favor the defendant in some circumstances. See Eddy, 59 F.3d at 207-209. Moreover, holding that this factor can never favor a prevailing defendant—coupled with the plaintiff-favored deterrence factor—would almost completely preclude a defendant from collecting attorney's fees under ERISA. That would contradict the plain language of the statute, which allows for an attorney's fee award for "either party." 29 U.S.C. § 1132(g)(1). Because the plain language of the statute would be contradicted if the value factor could never favor a prevailing defendant, and because there is no suggestion in Eddy supporting that interpretation, the Court rejects Clark's argument that this factor always favors the plaintiff.

benefit by providing "critical guidance" on "a significant legal issue"). This clarity will aid future ERISA plaintiffs in litigating their disputes, even if the clarification provides greater protection to plan administrators. See Risteen, 2003 WL 22011766 at *4. Thus, S&B's victory conferred a "common benefit" on future plaintiffs who may bring ERISA claims, and so this factor weighs in favor of awarding attorney's fees.

### e) Relative Merits of the Parties' Positions

The Court last considers the relative merits of the parties' positions in deciding whether an award of attorney's fees is justified. See Eddy, 59 F.3d at 209. S&B argue that because they prevailed on every claim, this factor weighs in their favor. See Def. Mot. at 12. In response, Clark essentially argues that the relative merits of the parties' positions only favor an award when one side's arguments are "devoid of merit." Holland, 496 F.3d at 677; see Pl.'s Opp'n at 19. Neither party identifies the correct standard. Holland's discussion of the "devoid of merit" standard, which Clark relies on, relates to the first factor, not the fifth, and so Holland lends Clark no support. Holland, 496 F.3d at 677. The D.C. Circuit in Eddy explicitly noted that the first and fifth factors are distinct. Eddy, 59 F.3d at 209.[3]

Although the standard is somewhat unclear, most courts in this district have not interpreted the fifth factor to require simply that movant prevailed on every claim, as S&B argue. Instead, courts have required the moving party's positions to be "substantially warranted" to weigh in favor of awarding attorney's fees. See Risteen, 2003 WL 22011766 at *5; see also Becker, 554 F. Supp. 2d at 18 ("The relative merits of the two positions were very clear, and Defendants could offer little substantive rebuttal to Plaintiff's argument."); Buford v. UNUM Life Ins. Co. of Am., 290 F. Supp. 2d 92, 104 (D.D.C. 2003) ("[T]he relative merits in the

---

[3] Clark can be forgiven for the confusion, as the first and fifth factors are similar and frequently blended together when analyzed.

parties' positions did not so clearly favor [defendant] that an award of attorney's fees and costs should be made."). And although the moving party's positions must be "substantially warranted," courts have not required that the non-moving party's arguments be "devoid of merit."

Here, Clark did not lose "because [she] vainly pressed a position flatly at odds with the controlling case law." Holland, 496 F.3d at 677. To the contrary, this Court granted her motion to reconsider its summary judgment ruling on a number of her claims, and it noted that her arguments, although unsuccessful, were reasonable. See Clark, 736 F. Supp. 2d at 233; see also Clark, 895 F. Supp. 2d at 47. Considering the reasonableness of Clark's arguments, it cannot be said that "[Clark] could offer little substantive rebuttal to [S&B's] argument," or that the relative merits of the parties' positions "so clearly favor [S&B] that an award of attorney's fees . . . should be made." Becker, 554 F. Supp. 2d at 18; Buford, 290 F. Supp. 2d at 92. Thus, this factor weighs against attorney's fees.

\* \* \* \* \*

When considered together, then, the Eddy factors do not favor an award of attorney's fees. It is not apparent that Clark engaged in bad faith during the proceedings; there is insufficient evidence to determine whether Clark can satisfy an award; an award of attorney's fees—rather than fulfilling ERISA's remedial purpose—would deter future plaintiffs from pursuing reasonable claims; and the relative merits of the parties' positions do not clearly favor attorney's fees. Although S&B's victory did provide a common benefit by clarifying ERISA in this jurisdiction, the other Eddy factors ultimately weigh against awarding attorney's fees. Hence, S&B's motion for attorney's fees against Clark will be denied.

## II. S&B's Motion For Attorney's Fees From Bruce

S&B also move to hold Clark's counsel, Stephen Bruce, jointly and severally liable for an attorney's fee award, pursuant to 28 U.S.C. § 1927 and section 1132(g).

### a) Fees Under Section 1927

Section 1927 provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

§ 1927. Fees under section 1927 are inappropriate unless the attorney's behavior was "reckless." United States v. Wallace, 964 F.2d 1214, 1217 (D.C. Cir. 1992). The threshold for recklessness is high, and "in general [it] requires deliberate action in the face of a known risk" that an attorney's actions will unreasonably delay the proceedings. Id. at 1220; see also Butler v. Potomac Elec. Power Co., No. 03-0946, 2007 WL 1549069, at *1 (D.D.C. 2011) (holding that sanctions under section 1927 were inappropriate, even when the targeted attorney filed a motion that had "no support whatsoever" in the case law). "Where courts have employed section 1927, the attorney's behavior has been repeatedly or singularly egregious." Wallace, 964 F.2d at 1220; see also Julien v. Zeringue, 864 F.2d 1572, 1575-76 (Fed. Cir. 1989) (sanctioning attorney under section 1927 when he continually missed deadlines and requested extensions to file his briefs); Fritz v. Honda Motor Co., 818 F.2d 924, 925 (D.C. Cir. 1987) (upholding section 1927 fees where attorney "repeatedly took actions which required [the defendant] to expend unnecessary time and money").

Here, S&B argue that Bruce's conduct meets the recklessness threshold because he "'unreasonably and vexatiously'" multiplied these proceedings. Defs.' Mot. at 12 (quoting 28 U.S.C. § 1927). In support, S&B point to the same conduct they cited under the first Eddy factor.

To the extent that Clark's and Bruce's conduct overlap, the bad faith discussion above is applicable here, meaning that Bruce's actions do not rise to the level of bad faith.[4] Likewise, his actions do not rise to the level of recklessness. At worst, Bruce's legal theories were weak and unclear, but this does not mean that they were "deliberate action[s]" taken to unreasonably delay the proceedings. Wallace, 964 F.2d at 1220. Because Bruce's behavior does not meet the high recklessness threshold set out in Wallace, fees under section 1927 are not warranted.

  **b)  Fees Under Section 1132(g)**

S&B also seek attorney's fees against Bruce under section 1132(g). Although nothing in section 1132(g) explicitly prohibits a party from seeking fees from opposing counsel, S&B cite no controlling case law that applies 1132(g) in awarding fees against a party's attorney. Further, the factors laid out in Eddy are focused exclusively on the actions of the parties, not their counsel.

S&B counter by citing a district court case from the Ninth Circuit for the proposition that, by virtue of bringing suit under a statute with a bilateral fee-shifting provision (section 1132(g)), Bruce has subjected himself to the possibility of being held liable for attorney's fees. See Ghorbani v. Pacific Gas & Elec. Co., 100 F. Supp. 2d 1165 (N.D. Cal. 2000). The Ninth Circuit, however, later cast doubt on Ghorbani's reasoning. See Benci-Woodward v. C.I.R., 219 F.3d 941, 943 (9th Cir. 2000) ("To hold [that] a contingent fee contract . . . gives the attorney . . . personal responsibility of financing the litigation, would demean his profession and distort the purpose of the various acceptable methods of securing his fee."); see also Lessard v. Applied Risk Mgmt., Inc., No. 99-3371, 2001 WL 34033100, at *5 (N.D. Cal. 2001) (noting that Benci-

---

[4] The only allegation S&B make against Bruce that was not made against Clark is that Bruce misled "a witness into believing that his participation in the litigation would result in a monetary award to the witness." Defs.' Mot. at 14. Upon reviewing the transcript, however, this is an inaccurate description of the witness's testimony. Hence, that conduct does not support a finding of bad faith. See Tr. of Bench Trial, Day 3 [ECF No. 124] at 468:7-25.

Woodward "rejected the key underpinning" of the reasoning in Ghorbani). Moreover, the fact that counsel is working on a contingent fee basis is critical to Ghorbani's reasoning, but S&B do not assert in their motion that Bruce had a contingent fee contract here. S&B's reliance on Ghorbani is misplaced because it is neither controlling nor persuasive, and this Court thus declines to extend fee liability under section 1132(g) to attorneys.

Even if defendants could recover fees from counsel themselves under section 1132(g), fees are not warranted in this case. An Eddy analysis focused on Bruce would be almost identical to the discussion above regarding Clark; because awarding fees against Clark is not proper, neither is awarding fees against Bruce. Hence, the Court will deny S&B's motion for fees as against Bruce as well.

## CONCLUSION

For the foregoing reasons, S&B's motion for attorney's fees will be denied. A separate Order has issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 23, 2014

13